MARIA J. MYERS, as Executrix, etc., Appellant, *v.* THE MU-
TUAL LIFE INSURANCE COMPANY OF NEW YORK, Respond-
ent.

In a power of attorney the party executing it described herself as execu-
trix and sole legatee under the will of M. ; she signed it simply in her
own name. *Held,* that the description was sufficient to show that it was
executed by her as executrix, and the failure to add her official character
to the signature did not impair its effect.

Plaintiff, who was executrix and sole legatee under the will of M., exe-
cuted certain powers of attorney to F., authorizing him in her name as
executrix and legatee as well as individually, "to sign, indorse and
make and deliver checks and drafts, promissory notes, receipts and drafts,
and all other vouchers and papers necessary and proper in and about
settling the affairs pertaining to the estate, * * * and to settle
* * * and receive payment of all claims, debts, demands due or to
become due to said estate." Also, to satisfy and discharge all mortgages
made to the testator, "and to demand, receive and receipt for any and
all moneys payable" on any such mortgages. At the time of the
death of M. defendant held a bond and mortgage assigned to it by him
as collateral for a loan. In pursuance of a written request, signed in
plaintiff's name by F., as her attorney, defendant, on payment of the
amount due it, assigned the bond and mortgage to F. & E., a firm in
which F. was a partner. F. subsequently received payment of the bond

SICKELS — VOL. LIV.        1

and his firm satisfied the mortgage. In an action to compel a reassignment of the bond and mortgage, or damages, in case a reassignment could not be had, *held*, that F., as far as plaintiff was concerned, had full authority under the power of attorney to receive payments on the bond, and conceding the assignment to the firm was unauthorized, he continued to have such right with power to cancel the bond and to satisfy the mortgage when paid in full, and as he did thus receive payment, no injury was done the plaintiff, and defendant was not liable ; but *held*, that F., under the powers of attorney, had power to direct the assignment to be made to his firm, and defendant was justified in obeying his instructions.

(Argued March 13, 1885 ; decided April 14, 1885.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made April 5, 1884, which reversed a judgment in favor of plaintiff, entered upon the report of a referee and ordered a new trial. (Reported below, 32 Hun, 321.)

This action was brought by plaintiff as executrix of the estate of Austin Myers to compel defendant to reassign a bond and mortgage alleged to have been assigned by plaintiff's testator to it as security for a loan, or in case of its inability to reassign, to pay the balance due over and above the loan.

The facts so far as material are stated in the opinion.

*William G. Tracy* for appellant. The power of attorney of October 30, 1870, was executed by Maria J. Myers individually, and in her individual name, and not by her as executrix of the last will and testament of Austin Myers, deceased, and delegates power only as to her individual matters. (*Stone* v. *Wood*, 7 Cow. 453; *Guyon* v. *Lewis*, 7 Wend. 26; *Spencer* v. *Field*, 10 id. 87; *Townsend* v. *Hubbard*, 4 Hill, 351; *Van Alstine* v. *Van Slycke*, 10 Barb. 383.) By the assignment of the bond and mortgage either Fitch or Ellis could satisfy the same and discharge the security; it could not be discharged by Mrs. Myers or in her name. (*People, ex rel. Eagle*, v. *Keyser*, 28 N. Y. 226 ; *Bowes* v. *Suger*, 8 Watts & Serg. 223.) In construing instruments of this kind nothing is to be taken by implication. The agent or attorney can do exactly what he

is in terms authorized to do, and nothing beyond. (*Nixon* v. *Hyserott*, 5 Johns. 57; *Rossiter* v. *Rossiter*, 8 Wend. 494; *Wicks* v. *Hatch*, 62 N. Y. 541; *Filley* v. *Gillman*, 34 Sup. Ct. 339; *Hubbard* v. *Elmer*, 7 Wend. 446; *North River Bk.* v. *Aymer*, 3 Hill, 262; *Bloomer* v. *Waldron*, id. 361; *Ives* v. *Davenport*, id. 373; *Lawrence* v. *Gebhard*, 41 Barb. 575; *Greenwood* v. *Spring*, 54 id. 375; *Fillyer* v. *Gillman*, 34 N. Y. Sup. Ct. 339; *Cuyler* v. *Merrifiad*, 5 Hun, 559; *Stillwell* v. *Mut. Life Ins. Co.*, 72 N. Y. 391; *Hender* v. *Beet Sugar Co.*, 13 Rep. 516; *De Mets* v. *Dagron*, 53 N. Y. 635; *Garrique* v. *Loescher*, 2 Bosw. 578; *Hollsmeyer* v. *Com. Exch. Bk.*, 37 How. 203; affirmed, Ct. App., 6 Alb. L. J. 171; *Baine* v. *Matteson*, 54 N. Y. 663; *Craighead* v. *Peterson*, 72 id. 279.) In all cases the liability of the principal depends, *First*, Whether the act was done in the exercise of the power delegated; *Second*, Whether it was done within the precise limits of such delegated authority. (*Mechanics' Bk.* v. *Bk. of Columbia*, 5 Wheat. 327; *Smith* v. *Kidd*, 68 N. Y. 130.) The relation which the defendant occupied, holding the bond and mortgage as collateral to the loan, was that of trustee of the plaintiff in regard to the fund. (Story on Bailments, §§ 339, 341; *Brownell* v. *Hawkins*, 4 Barb. 491; *Lawrence* v. *Maxwell*, 53 N. Y. 19; *Cory* v. *Leonard*, 56 id. 501; *Wilson* v. *Little*, 2 Comst. 443.) The defendant held the bond and mortgage as a pledge, and the same was inseparable from the debt; when the debt was paid the pledgor was entitled to have the property restored to him, and plaintiff, as executrix of the estate, stood in the same relation as pledgor that the testator occupied in his life-time. (*Bennett* v. *Austin*, 81 N. Y. 322; *Castleton* v. *Lansan*, 2 Caine's Cas. 200; *Wilson* v. *Little*, 2 Comst. 443, 448; *Kaskens* v. *Kelly*, 1 Robt. 160; *Markham* v. *Jaudon*, 41 N. Y. 241; *People, ex rel. Eagle*, v. *Keyser*, 28 id. 226.) The defendant cannot in this case invoke the principle that the authority of the agent may be, not only that conferred upon him by his commission, but as to third persons, that which he is held out as possessing. (*Walsh* v. *Hartford*

*F. Ins. Co.,* 73 N. Y. 10; *People* v. *Bk. of North America,* 75 id. 547.)

*Julien T. Davies* for respondent. The powers conferred upon Thomas B. Fitch by the powers of attorney, dated respectively December 30, 1870, and June 5, 1873, were conferred by the plaintiff in her representative capacity as well as individually. (*Hood* v. *Hallenbeck,* 7 Hun, 14; *Bank of Genesee* v. *Patchin,* 19 N. Y. 313.) The power of attorney, of December 30, 1870, is to be construed in accordance with the ascertained intention of the maker. (*Posned* v. *Bayless,* 59 Ind. 60; *Howard* v. *Baillie,* 2 H. Bl. 618; *Wilson* v. *Troup,* 2 Cow. 193; *Sudgen* v. *Powers,* id. 233, 234; *Feldman* v. *Beier,* 78 N. Y. 293; *Newland* v. *Oakley,* 6 Yerg. 489; *Taggert* v. *Stanberg,* 2 McLean, 550; *State* v. *Banks,* 48 Md. 520; *Maynard* v. *Mercer,* 10 Nev. 35; *Le Roy* v. *Baird,* 8 How. [U. S.] 451; *Very* v. *Very,* 13 id. 358; *Witherington* v. *Herring,* 5 Bing. 456; *Halladay* v. *Daily,* 19 Wall. 610; *Bronson* v. *Coffin,* 118 Mass. 160; *Hudson* v. *Whiting,* 17 Conn. 487; *Merrick* v. *Wagner,* 44 Ill. 266; *Viele* v. *Germania Ins. Co.,* 26 Iowa, 9; *Lamy* v. *Burr,* 36 Mo. 85; *Taylor* v. *La Beaume,* 17 id. 338.) The words employed in the power of attorney gave Fitch general power to settle the affairs of the estate of Austin Myers, deceased. (*Baxter* v. *State,* 9 Wis. 44; *Sharp* v. *Knox,* 4 La. 460; *Hepburn* v. *Griswold,* 8 Wall. 615; *Simonds* v. *Clapp,* 22 N. H. 231; *Poucher* v. *Blanchard,* 86 N. Y. 256; *Borcherling* v. *Katz,* 37 N. J. Eq. 153; *Wicks* v. *Hatch,* 62 N. Y. 536.) Fitch was a general agent to settle the affairs of Austin Myers, deceased. (*Butler* v. *Maples,* 9 Wall. 766.) The intention of the power of attorney was to place the power of action without consultation with plaintiff in the hands of Thomas B. Fitch, in settling this and to commit to him the substantial control of the entire matter as far as it was possible to constitute him executor in the name of Mrs. Myers. (*Howard* v. *Baillie,* 2 H. Bl. 618.) The plaintiff has practically construed the power of attorney of December 30, 1870, and manifested her inten-

tion in its execution to confer upon Thomas B. Fitch full
power to do all things deemed by him necessary to settle the
estate by permitting him to exercise that power for a number
of years prior to his death. (*Dunning* v. *Roberts*, 35 Barb.
467.)   The direction in writing given by Fitch as the attorney
of plaintiff to the defendant, to assign to Fitch and Ellis the
Farley bond and mortgage, was a paper " necessary and proper
in and about settling the affairs pertaining to the estate of
said Austin Myers, deceased." (*Butler* v. *Maples*, 9 Wall.
766.)   Delivery to the true owner is always a good defense to
an action against a pledgee by a pledgor. (*The Idaho*, 93 U.
S. 575 ; *Cromwell* v. *Bk. F. I. Co.*, 44 N. Y. 12.)   Even an
agent, to collect, must pay to a third party against his principal
on demand of third party, if rightful, and is liable if he pays
to his principal after notice of rights of the third party. (*Pey-
ser* v. *Wilcox*, 64 How. 527; *Sims* v. *Brown*, 6 T. & C. 5 ;
3 Pomeroy's Eq., § 1325, 340 ; *Conherton Co.* v. *R. R. Co.*, 3
Hun, 527 ; *Grier* v. *Sampson*, 27 Penn. St. 192 ; *Com.* v. *Gor-
man*, 16 Gray, 601.)   The defendant was under no necessity
of inquiring whether the written direction of Fitch to assign
the bond and mortgage was, in fact, a paper necessary and
proper for settling affairs, etc. (*Dabney* v. *Stevens*, 10 Abb.
Pr. [N. S.] 51; *Clark Bk.* v. *Albion*, 43 Barb. 598; *Marsh*
v. *Gilbert*, 2 Hun, 58 ; *Weeks* v. *Fox*, 3 T. & C. 354; *Spof-
ford* v. *Hobbs*, 29 Me. 148 ; *Flynn* v. *Galesbury*, 12 Bardw.
200 ; *Mechanics' Bk.* v. *Griswold*, 72 N. Y. 472; *Western
Md. Co.* v. *Franklin Bk.*, 60 Md. 46 ; *McCullough* v. *Mary-
land*, 4 Wheat. 413 ; *Hepburn* v. *Griswold*, 8 Wall. 615.)   If
there was any ambiguity in the power of attorney, the princi-
pal must bear any loss that results from the adoption of a pos-
sible construction by his agent or the person dealing with the
agent. (*Union Mut. L. Ins. Co.* v. *Marten*, 3 Fed. Rep. 881;
*North River Bk.* v. *Aymar*, 3 Hill, 262; *Ireland* v. *Living-
ston*, L. R., 5 H. L. 391 ; Whart. on Ag., §§ 223, 224 ; Story
on Ag., § 74 ; *North River Bk.* v. *Rogers*, 22 Wend. 651 ;
*Voorhis* v. *Olmstead*, 66 N. Y. 117.)   Under the facts in this
case plaintiff is chargeable with notice of the dealings of Fitch

as her agent with defendant, and must be held to the consequence of having ratified those dealings. (*Stettwell* v. *Mut. L. Ins. Co.*, 72 N. Y. 392; *Caines* v. *Bleecker*, 12 Johns. 305; *Hanks* v. *Drake*, 49 Barb. 202; *Adams* v. *Mills*, 60 N. Y. 539; *Union Gold Co.* v. *Rocky Bk.*, 2 Col. 565; affirmed, 96 U. S. 640; *Whitehead* v. *Wells*, 29 Ark. 99; *Bank* v. *Davis*, 2 Hill, 461; *Ingalls* v. *Morgan*, 10 N. Y. 165; *Fulton Bk.* v. *Canal Co.*, 4 Paige, 137; Dunlap's Paley on Ag., chap. 3, part 2, § 2; Whart. on Ag., § 177; *Griswold* v. *Haven*, 25 N. Y. 595; *Schuyler Case*, 34 N. Y. 30; *Bank* v. *Aymar*, 3 Hill, 262; *Harrod* v. *McDaniels*, 126 Mass. 415; *Martin* v. *Webb*, 110 U. S. 15.) A principal has been held to be bound even if the agent had professed to act entirely in his own name. (*Briggs* v. *Partridge*, 64 N. Y. 351; *Nicoll* v. *Burke*, 8 Abb. N. C. 213; *People* v. *Keyser*, 28 N. Y. 226; *Litch* v. *Wells*, 48 id. 601.)

MILLER, J. The defendant held the bond and mortgage which is the subject of this controversy, as security for a loan made by it to the plaintiff's testator. It assigned the same to Thomas B. Fitch and James M. Ellis on the 29th day of April, 1874, upon payment of the loan, in pursuance of written directions which were signed, "Maria J. Myers, Executrix, by T. B. Fitch, Attorney."

The question to be determined is whether Fitch had any authority as attorney and agent of the plaintiff to direct and receive, in connection with Ellis, the assignment of the bond and mortgage in controversy, or in case he had no such authority, whether he was vested with power to receive the money which was paid on account of said bond and mortgage after the assignment, a portion of which was paid or passed to the credit of Myers' estate.

It was found by the referee upon the trial that Fitch and Ellis were copartners in various kinds of business from the 1st of January, 1874, until September, 1879, when Fitch died; that during that time they used, in their own business, large funds, and among others those that came from the estate of

Myers without the knowledge of the plaintiff, and without her having giving any assent thereto, and entirely without benefit to the said estate.  It also appears that Ellis was president and Fitch cashier of the Mechanics'·Bank of Syracuse, and that Fitch paid the defendant the amount of the loan by his check on said bank, and on his return to Syracuse from New York he reimbursed the bank by executing the plaintiff's note and having it discounted and held by the bank until it was subsequently paid up in full out of the moneys derived from collections made on the bond and mortgage.  The note was paid with interest on the 8th of July, 1875, by Fitch, who was then in charge of Myers' estate, and the estate was charged, on its pass-book with the bank, with $33,488.04, that being the amount of the note and interest, and credited with $36,621.31, the latter sum being the balance received on the Farley mortgage and which was paid to Fitch.  It was also found by the referee that the estate of Fitch, at the time of his death, was and has continued to be insolvent, and that the estate of Ellis is admitted to be wholly insolvent.

The authority of Fitch to act in the premises depends upon two several powers of attorney executed by the plaintiff to him.  The first of these bears date December 30, 1870, and describes the plaintiff as executrix and sole legatee of the last will and testament of Austin Myers, deceased, and is signed by her without adding any thing to her name, or stating otherwise than in the body of the instrument that she was such executrix.  The description of the official character of the plaintiff in the instrument itself sufficiently shows that it was executed by her as executrix, and nothing further was required for that purpose.  It purports on its face to be a power of attorney from the plaintiff as executrix, and a failure to add her official character to the end of her name does not impair its effect.  The second power of attorney bears date June 5, 1873, and in the body of the instrument describes the plaintiff as individually and as sole executrix of the last will and testament of Austin Myers, deceased, and is signed individually and also as executrix, thus obviating any objection that might be urged

for a failure to add her official character at the end of her signature.

The first power of attorney authorized Fitch, in the name of the plaintiff, as executrix and legatee as well as individually, to sign, indorse, make and deliver checks, drafts, promissory notes, receipts, and all other vouchers and papers necessary and proper in and about settling the affairs pertaining to the estate of said Austin Myers, deceased, and to settle, compound, compromise, extend payment of and receive payment for all claims, debts, demands, due or to become due to the said estate, or to her as such executrix and legatee.    The second power of attorney authorized him to satisfy and discharge any and all mortgages made to Austin Myers, deceased, and to satisfy any and all mortgages made to her individually,    *    *    *    and to demand, receive and receipt for any and all moneys payable or to become due and payable on any or all such above-described mortgages as they shall become due.

Under the provisions of these powers of attorney, Fitch had ample power to satisfy the mortgage in question at any time when the whole amount was paid to him.    This authority would have been in full force, if the mortgage had been directly assigned to the executrix of the estate.    Fitch would then have been justified upon its payment in giving a satisfaction of the mortgage.    Upon its being assigned to Fitch and Ellis, he continued to have the right to receive the money, as he evidently did, and to give receipts for the same, and thus, so far as the plaintiff was concerned, to satisfy the mortgage.    His right to receive the money was clearly within the language as well as the meaning of the powers of attorney, and whether he received it before or after the assignment made to himself and Ellis can make no difference.    Even if Fitch had no authority to direct the assignment to himself and Ellis, as he had authority to receive the money after it was assigned, and as he did receive it within the letter and scope of his authority, there is no ground for the contention that the defendant should be made liable to pay the amount of the mortgage after deducting the amount of the loan.

It cannot be said, we think, that Fitch did not receive this money for the estate and under the powers of attorney. A portion of it was applied in payment of the note given to raise the money paid to the defendant, and it is evident that the whole of it was received by Fitch by virtue of the powers of attorney. The right to receive was the same whether the mortgage was assigned to the executrix or to Fitch and Ellis, and even if a third person had received the assignment and had paid the money to Fitch for the same, he would still have received it by virtue of the powers of attorney. It could not be said that he received it individually and on his own account, for it is manifest that he was only acting on behalf of the executrix, whose attorney he was. He was vested with authority to receive the amount of this bond and mortgage for the benefit of the estate, and there is no valid ground upon which it can be held that he received it in any other capacity than as attorney for the executrix alone, and on no other account.

Such being the case, and the defendant having acted in entire good faith, there is no reason for claiming that it was chargeable with any want of vigilance or care, or any disregard of the rights of the plaintiff, even if any question might arise as to the authority of Fitch to direct the assignment to be made to himself and Ellis, or of the defendant to assign the mortgage to them. The fact that no injury was done to the plaintiff by the receipt of the money by Fitch after the assignment, is a perfect answer to the claim that the defendant should be held responsible for any portion of the amount paid to Fitch on the mortgage. It was actually and absolutely paid to, and settled and canceled and satisfied by him or by his authority and direction. It may be assumed he had the money in his hands, and could have paid it over to the executrix if he had chosen to do so; and if he violated his trust, does not detract from, impair or discharge the power he possessed to receive the same. The fraud of Fitch was not in directing and taking the assignment to himself and Ellis, but the misappropriation of the money after it had been received upon the mortgage. This could have been done by him if the mort-

gage had been assigned direct to the plaintiff as executrix of the estate, and it is not apparent why the defendant should be held liable for the default of Fitch, as he was acting within the scope of his authority in receiving the money no more in the one case than in the other.

Independent of the power to satisfy the bond and mortgage contained in the second power of attorney, Fitch had authority to sign and deliver all receipts, vouchers and papers necessary and proper in the settlement of the estate, and to settle and receive payment for all claims which were due and to become due to the estate. These terms were broad and comprehensive, and, it may fairly be inferred, conferred upon Fitch the absolute right to control and direct the manner in which money should be received or settlements made. He undoubtedly was authorized to direct that the mortgage should be assigned to the executrix, or to himself and Ellis, as might suit his own convenience, and the defendant was justified in obeying his directions in this respect. The duty did not devolve upon defendant to inquire why the assignment was directed to be made to Fitch and Ellis, or any other person who might have been named. For any thing that appeared, Fitch and Ellis may have been ready to advance the money due on the mortgage to the estate, but whether this was so or otherwise is not material, and it was sufficient for defendant's justification that Fitch, with whom it was dealing, was acting within the scope and purpose of the powers of attorney which the plaintiff had executed to him. Upon no principle can it be held that defendant was put upon inquiry, and, under the circumstances, required to investigate and determine whether Fitch might not divert the money from the estate to which it belonged, or appropriate it to his own use. The law requires no such degree of vigilance from a party who is transacting business with the attorney and agent of a principal when such attorney is acting under authority as comprehensive as that conferred by the powers of attorney in question upon Fitch.

Some cases are cited by the appellant's counsel for the purpose of establishing that Fitch had no authority, under the

powers of attorney, to direct the assignment of the bond and mortgage to himself and Ellis, but none of them hold that under the facts presented in this case, no such authority was conferred. It is very manifest that Fitch was acting as the agent of the plaintiff under the powers of attorney from the time of their execution, in the transaction of business relating to the estate. He procured the money, upon the note which was discounted, and paid the same to the defendant upon the assignment of the mortgage to himself and Ellis. Under this assignment he collected the money from Farley on the mortgage and repaid the amount of the note to the bank and gave credit to the estate for the money he had received beyond the amount of the note. All these acts were done by the express authority conferred upon him as agent and attorney. Subsequently, and on the 8th of January, 1877, in accordance with his duty as plaintiff's agent and attorney, he made a statement of the plaintiff's affairs and presented the same to her, which statement contained an entry of the bond and mortgage in question as follows: " Farley bond and mortgage, $62,066.47." This was done after the credit had been given to her on the bond and mortgage, July, 1875, of $36,621.31. Fitch thus represented himself as the agent and attorney and the plaintiff accepted him as such and had full opportunity to inquire and ascertain as to the real situation of the property in his hands. If she had availed herself of the information she had, she would have learned no doubt the actual condition of affairs.

Under the circumstances we think she was chargeable, as principal, with all the knowledge the agent possessed in the transaction of the business he had in charge. (*Adams* v. *Mills*, 60 N. Y. 539.)

Having slept upon her rights for a number of years without inquiry or investigation, it is questionable whether she is in a position to repudiate the acts of her agent, and whether her acquiescence may not be considered a ratification of the same. As, however, it appears that the powers of attorney fully authorized the act of Fitch in directing the assignment and of the defendant in making it, it is not necessary to determine in this case whether it was ratified by the conduct of the plaintiff.

The question whether Randall had any interest in the bond and mortgage is immaterial in the disposition of the case considered, and, therefore, it is not important to consider the other questions raised.

The order of the General Term was right and should be affirmed.

All concur, except ANDREWS, J., taking no part.

Order affirmed and judgment accordingly.