Elizabeth A. L. Hyatt, Appellant, *v.* Cyrus Clark, Respondent,

Cyrus Clark, Respondent, *v.* Elizabeth A. L. Hyatt, Appellant.

One S., who had a general power of attorney under seal from H., who was in Europe, to manage her property and affairs and to sell, convey and assign any portion of her real estate, entered into an agreement with C. to lease to him certain of the real estate for the term of five years, with the privilege of renewal for another like term, C. to make certain improvements on the premises. A lease was drawn up and executed by S., as agent for H., and handed to C., but as he questioned the authority of S., it was understood the acceptance thereof should await an answer from H. to a request for authority to execute it. Her answer, however, was a denial of the request and a cancellation of the power of attorney. S. showed the answer to C. and requested him to cancel the lease ; this he refused to do and took possession of the premises. S. did not report to H. that the delivery of the lease was conditional, but informed her it was valid and could not be cancelled. She accepted the rent reserved by the lease until nearly the end of the original term, and saw improvements being made upon the premises by C. Upon his demanding a renewal of the lease, she was informed by S. of the conditional acceptance, and thereupon she refused subsequent payment of rent and refused to renew. *Held,* that in the absence of any claim of bad faith or collusion between S. and C., by the acceptance of the rent, H. ratified the lease, and so was bound by its terms ; and this without regard to the question as to the authority of S. to execute, or as to the conditional delivery ; that if S. had no authority H. was chargeable with knowledge of her right to disaffirm, whether any agreement to that effect had been made or not; that if S. had authority she was chargeable with and conclusively presumed to have acted upon the knowledge possessed by him that the delivery was conditional; and that, therefore, in either case, having received the benefits of the contract she could not after so long acquiescence disaffirm it, and so it was irrevocable.

Reported below, 23 J. & S. 98.

Argued January 31, 1890 ; decided February 25, 1890.

Appeals by Elizabeth A. L. Hyatt from two several orders of the General Term of the Superior Court in the city of New York made June 23, 1887, which respectively reversed separate judgments in her favor entered upon the decision of the court on trial at Special Term.

These are cross-actions between the same parties, tried together and submitted upon the same evidence. The findings are the same in each, except as to matters purely formal. The action brought by Mr. Clark was for the specific performance of a clause in a lease between the parties, which provided for the renewal thereof upon the expiration of the first term of five years. The action brought by Mrs. Hyatt was to annul and cancel said lease upon the ground that her agent had exceeded his authority in executing and delivering it.

On the 2d of January, 1880, Mrs. Hyatt, who was then in England, appointed her brother, Arthur Lake, her agent to manage and conduct her property and affairs in the United States; to sell and dispose of all or any part of her real or personal estate; to convey and assign the same to the purchaser or purchasers thereof; to receive and recover all sums of money due or to become due to her, and to sign, seal and execute all such agreements, conveyances, assurances, acts, deeds, matters and things as should be required. The appointment was by a written instrument, duly signed, sealed and acknowledged.

About January 15, 1880, negotiations were begun between Mr. Clark and Mr. Lake in relation to a lease of certain premises belonging to Mrs. Hyatt, known as No. 25 Waverly place, in the city of New York. Clark raised the question whether Lake was authorized by said power of attorney to give a lease, and wished him to cable for additional authority, but he did not do so, as he had written to Mrs. Hyatt about the offer made and his letter was about due. Pending an answer to his letter, and about January twenty-ninth, the lease in question was signed by Lake as attorney for Mrs. Hyatt, the lessor, and by Clark and one Gardner, as lessees. Lake then handed the lease to Clark, for himself and Gardner, but, as the court found, " Clark did not accept the delivery of the lease, but postponed his decision as to accepting or not accepting until he should hear further from " Mrs. Hyatt. On the seventh of February, Mrs. Hyatt sent a cable message to Lake, in these words: " Your powers attorney cancelled. Sign no lease."

In a day or two Lake showed this message to Clark and requested him to cancel " the matter of the lease and letting so far as the same had proceeded," but he refused, saying that he would take any risk there might be.  He thereupon filed his lease for record and took possession of the premises.  Lake did not report to his sister that the lease had been " executed in any sense conditionally, or that Clark had not accepted delivery before the receipt of the message," but he informed her that it was signed January twenty-ninth, that it was valid and that it could not be cancelled or avoided.  Mrs. Hyatt did not know that there had been any condition connected with the delivery of the lease until November 10, 1884, when she heard of it through Lake.  In the meantime she had accepted the rent reserved by the lease as it became due in quarterly payments, the first payment having been made May 1, 1880.  The lease provided for an annual rental of $2,000 for five years, with the right of renewal for a second and third term of five years each, at $2,500 per year during the former, and $3,500 per year during the latter.  The lessees were to expend not less than $2,000 during the first six months in improving the premises, and they, in fact, expended more than $4,000 for that purpose.

Before the commencement of this litigation Clark, having first acquired all of Gardner's interest in the lease, gave due notice of his election to continue as tenant for another term of five years.

Further facts appear in the opinion.

*William Man* for appellant.  This court will examine questions of law only, and will consider that the General Term has, at the request of Mr. Clark, fully examined his exceptions on matters of fact, and that it agreed with the trial judge as to the facts, thus concluding any further discussion of matters of fact.  (Code, § 1338; *R. Co.* v. *Roach*, 97 N. Y. 378; *Van Tassel* v. *Wood*, 76 id. 614; *Davis* v. *Leopold*, 87 id. 620; *Ward* v. *Craig*, Id. 550, 557.)  The power of attorney did not authorize the making of any lease.  (*Craighead* v.

*Peterson,* 72 N. Y. 279, 284; *Geiger* v. *Bolles,* 1 T. & C. 129; *Filley* v. *Gilman,* 2 J. & S. 339; *Taylor* v. *Hoey,* 26 id. 402; *Wood* v. *Goodridge,* 6 Cush. 117; *Hubbard* v. *Elmer,* 7 Wend. 446; Mechem on Agency, § 306; *Rossiter* v. *Rossiter,* 8 Wend. 495; *Jeffrey* v. *Hursh,* 49 Mich. 31.) There has been no ratification of the lease by Mrs. Hyatt. (Story on Agency, § 329; *Price* v. *Keys,* 1 Hun, 177; 62 N. Y. 378; *Hoffman* v. *Tredwell,* 2 T. & C. 57; *Nixon* v. *Palmer,* 8 N. Y. 398; *Seymour* v. *Wyckoff,* 10 id. 213; *Stilwell* v. *M. L. Ins. Co.,* 72 id. 385; *Ritch* v. *Smith,* 82 id. 627; *Benninghoff* v. *A. Ins. Co.,* 93 id. 495; *Craighead* v. *Peterson,* 72 id. 285.) The letter of Yeaman, which was offered in evidence, was clearly competent. (*Merrill* v. *I. R. R. Co.,* 16 Wend. 597; *Bank of Monroe* v. *Culver,* 2 Hill, 531; *Halsey* v. *Sinsebaugh,* 15 N. Y. 485; *Russell* v. *H. R. Co.,* 17 id. 134; *Guy* v. *Mead,* 22 id. 466; *Cole* v. *Jessup,* 10 id. 96; *Mandeville* v. *Reynolds,* 68 id. 538; Stephens on Ev., 237, art. 136, note.) Parol evidence is always admissible to explain and qualify the delivery of a deed, or any other instrument in writing, even where it has been delivered by the grantor to the grantee. (*Gilbert* v. *N. A. F. Ins. Co.,* 23 Wend. 43; *Cocks* v. *Baker,* 49 N. Y. 107; *Jackson* v. *Perkins,* 2 Wend. 308; *Ford* v. *James.* 2 Abb. Ct. App. Dec. 159; *Graves* v. *Dudley,* 20 N. Y. 77; *Fonda* v. *Sage,* 48 id. 173; *Reynolds* v. *Robinson,* 110 id. 654; Greenl. on Ev. 297; *Brackett* v. *Barney,* 28 N. Y. 333, 340, 341; *Crosby* v. *Hillyer* 24 Wend. 284; *Jackson* v. *Richards,* 15 id. 617.) There is nothing in this case upon which to found an argument that there is an estoppel against Mrs. Hyatt on the ground that it was the deceit of her own agent that injured her. (*People* v. *Bostwick,* 32 N. Y. 445.)

*Joseph H. Choate* and *Sanger & Davis* for respondent. If Mr. Lake had no authority under the original power to execute the lease, nevertheless Mrs. Hyatt ratified the act of her agent in executing that instrument. (Whart. on Agency, § 225; Story on Agency, §§ 79, 80, 140; *Adams* v. *Mills,* 60

N. Y. 533, 539; *Stilwell* v. *M. L. Ins. Co.*, 72 id. 385, 392; 2 Kent's Comm. 801; Story on Agency, § 256; *Griswold* v. *Haven*, 25 N. Y. 595; *N. Y., etc., R. R. Co.* v. *Schuler*, 34 id. 30; *Myers* v. *M. L. Ins. Co.*, 99 id. 1, 11; *Meehan* v. *Forrester*, 52 id. 279; Whart. on Agency, § 92; Story on Agency, § 239.) The delivery of the lease to Mr. Clark was an absolute delivery as far as Mrs. Hyatt was concerned. The right was reserved to Mr. Clark, only, to refuse to accept it. (*Townson* v. *Tokel*, 3 B. & Ald. 36.) The power of attorney given to Mr. Lake empowered him to execute the lease. (*Hedges* v. *Riker*, 5 Johns. Ch. 163; *U. S.* v. *Gratiot*, 14 Pet. 526; *Craighead* v. *Peterson*, 72 N. Y. 279, 283; Story on Agency, § 140; *Adams* v. *Mills*, 60 N. Y. 539; *Myers* v. *M. L. Ins. Co.*, 32 Hun, 321; 99 N. Y. 1.)

VANN, J. We do not deem it important to decide whether the power of attorney authorized Mr. Lake to execute the lease in question or not, because, in either event, the same result must follow, under the circumstances of this case.

If, on the one hand, he acted without adequate authority in giving the lease, both the lessor and lessee knew it, for both knew the facts and both are presumed to have known the law, and the former, at least, had an absolute right to disaffirm the contract. As she knew the contents of the power of attorney and the lease, and that the latter was executed by her agent in her name, it was not necessary that she should be informed of the legal effect of those facts. (*Kelley* v. *Newburyport & Amesbury Horse R. R. Co.*, 141 Mass. 496; *Phosphate Lime Co.* v. *Green*, L. R. [7 C. P.] 43; Mechem on Agency, § 129.)

Whether influenced by caprice or reason, if she had promptly notified the lessees that she repudiated the lease because her agent had no power to execute it, their rights would have been forthwith terminated and they would have had no lease. The right to disaffirm on one tenable ground, would, if acted upon have been as effective as the right to disaffirm upon all possible grounds. Under the condition supposed, the law

gave her the same right to disaffirm without any agreement to that effect, that she would have had if her agent, being duly authorized to lease, had expressly provided, in the written instrument, that she could disaffirm, if she chose to do so. Therefore, by accepting the rent of the demised premises for more than four years without protest or objection, she ratified the lease as completely as she could have, if she had known of two grounds upon which to disaffirm, instead of only one. Two grounds could not make the right any more effectual than one. If she had the right at all, the number of grounds upon which she could justify its exercise is unimportant. Her ratification was none the less complete, because, being unwilling to run the risk of a doubtful question of law, she did not at once act as she would have acted if she had known all of the facts. As said by the court in *Adams* v. *Mills* (60 N. Y. 539), "the law holds that she was bound to know what authority her agent actually had." Having executed the power of attorney, she is conclusively presumed to have known what it meant and the extent of the authority that it conferred. (Best on Ev. 123; Whart. on Ev. § 1241.)

If the lease was *ultra vires*, therefore, by ratifying it, she in legal effect executed and delivered it herself, and whatever was said between Lake and Clark, became immaterial. Even if they agreed that she should have the right to disapprove, it is of no importance, because she had that right without any such agreement. If her agent had no power to execute the lease, the delivery thereof, whether absolute or conditional, could not affect her rights. If she was dissatisfied with it, she could have been relieved of all responsibility thereunder by promptly saying to the lessees: " This contract was not authorized by the agency I created, and I refuse to be bound by it." After that there would have been no lease. If the action of her agent was unauthorized, it did not bind her, until by some act of ratification she bound herself. By ratifying, she waived any right to disaffirm upon any ground, known or unknown, because the lease did not exist, as a lease, by the act of her agent, but by her own act of confirmation.

If, on the other hand, Mr. Lake was duly authorized to give the lease, certain presumptions of controlling importance spring from that fact. He is presumed to have disclosed to his principal, within a reasonable time, all of the material facts that came to his knowledge while acting within the scope of his authority.

It is laid down in Story on Agency (§ 140), that "notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from or is at the time connected with the subject-matter of his agency, for, upon general principles of public policy, it is presumed that the agent has communicated such facts to the principal, and if he has not, still the principal having intrusted the agent with the particular business, the other party has a right to deem his acts and knowledge obligatory upon the principal."

In other words, she was chargeable with all the knowledge that her agent had in the transaction of the business he had in charge. (*Ingalls* v. *Morgan*, 10 N. Y. 178; *Adams* v. *Mills*, *supra*; *Myers* v. *Mutual Life Ins. Co.*, 99 N. Y. 1, 11; *Bank of U. S.* v. *Davis*, 2 Hill, 451; *Higgins* v. *Armstrong*, 9 Col. 38.)

It was his duty to keep her informed of his acts and to give her timely notice of all facts and circumstances which would have enabled her to take any step that she deemed essential to her interests.

She does not question the good faith of Mr. Lake, and there is no proof of fraudulent collusion between him and Mr. Clark, who, while under no obligation to inform Mrs. Hyatt of the facts, had the right to assume that her agent had done so. (*Ingalls* v. *Morgan*, *supra*; *Meehan* v. *Forrester*, 52 N. Y. 277; *Scott* v. *Middletown*, *U. & W. G. R. R. Co.*, 86 id. 200.)

It was her duty to protect her interests by selecting an agent of adequate judgment, experience and integrity, and if she failed to do so, she must bear the loss resulting from his inexperience, negligence or mistaken zeal. After the lapse of sufficient time, therefore, she is presumed to have acted, with knowledge of all the acts of her agent, in the line of his agency.

By accepting and retaining the rent, which was the fruit of her agent's acts, for nearly five years without objection, she is presumed to have ratified that act. (*Hoyt* v. *Thompson* 19 N. Y. 207; *Alexander* v. *Jones*, 64 Iowa, 207; *Heyn* v. *O'Hagan*, 60 Mich. 160; 2 Greenl. on Ev. §§ 66, 67.) Without expressing any dissatisfaction to the lessees, she received eighteen quarterly payments of rent before electing to avoid the lease. She made no offer to return any part of the rent so paid, although she tendered back the amount deposited to her credit for the nineteenth quarter at the time that she demanded possession of the premises.

Independent of what she is presumed to have known through the information of her agent, she in fact knew the terms of the lease and that it was executed by Mr. Lake in her name.

Upon her arrival in this country in September, 1880, she visited the premises and saw the additions and improvements that the tenants were making thereto, and at that time as well as subsequently, rent was paid to her in person. Apparently she had all the knowledge that she cared to have, for she made no inquiry of her agent until about six months previous to the expiration of the first term of five years, and not until after the lessees had given notice of their election to continue the lease for a second term. Thinking that the rent was low, she then tried to find out something from her agent that would enable her to avoid the lease, and as the result of her efforts in this direction, ascertained the fact upon which she bases her right to succeed in this litigation. But it was then too late for her to disaffirm, because her long silence and many acts of ratification had been relied upon by the tenants, who had expended a large sum of money in making permanent improvements upon the property. Having received the benefits of the contract, she could not, after years of acquiescence, suddenly invoke the aid of the courts to relieve her of any further obligation, because she had but recently discovered a fact that she should have ascertained, and which the law presumes that she did ascertain, long before. (1 Am. & Eng. Encyc. of Law, 429.)

We think that after ample opportunity for election and action, she ratified the lease and that her ratification was irrevocable.

In each action the order appealed from should be affirmed and judgment directed upon the stipulation in favor of the respondent, with costs of appeal to this court in one action only.

All concur, except HAIGHT, J., not sitting.

Order affirmed, and judgment accordingly.