Dwight, P.J.
The action was under the civil damage act (Laws of 1873, chap. 646). It was brought by the plaintiff as the widow of a person whose death was alleged to have been caused by his own intoxication, produced in whole or in part by liquor sold to him by the defendant McGovern, on premises rented to him by the defendant Edward B. Germain, as the agent and manager of the owner James T. Germain. The three persons named were originally made defendants in the action, but James T. Germain has died since this appeal was taken and Edward B. Germain, as his executor, has been substituted for him as defendant, and the defendant McGovern has made default.
There was no motion for a new trial below, and the evidence-bearing upon the material questions of fact was either conflicting or not contradicted by the defendants; we are, therefore, confined, on this review, to the consideration of exceptions taken by the defendants on the trial.
The two Germains were brothers. James lived in Dutchess county, but owned the premises in Brockport, Monroe county, in which the liquor was found to have been sold. Edward lived in Brockport and had the entire management and control of his brother’s property there, including the premises mentioned. Ten years or more before this cause of action arose he had rented the premises to one Guelph, by a written lease which made no mention of the use to which it was to be put. Guelph occupied it four or five years as a saloon and sold out the business to McGovern, who-continued it at the same place five or six years more, with the full knowledge and consent of Edward Germain, to whom he paid his rent.
There was no evidence that James Germain personally knew,, *321 indeed the learned trial judge instructed the jury that it must be found as a fact that he did not have personal knowledge, that the premises in question were occupied as a saloon; but the case as to him was submitted to the jury upon the question of fact whether he gave unlimited authority to his brother to rent and manage the property as he saw fit and without restriction, as to the use for which it should be occupied; and with the instruction in effect, that, if such was the case, then James was responsible for the use for which Edward permitted the property to be occupied, and was chargeable with Edward’s knowledge of the use for which it was occupied, and was liable jointly and severally with him in this action.
The question of fact involved, if there was one, was properly decided in favor of the plaintiff. There was really no question but that the owner of the property left it with his brother to manage it as if it were his own, without restriction as to the use for which it should be rented, or inquiry as to the use for which it was rented, during the ten years or more while it was in fact rented for a saloon. The owner himself, who was a witness on the trial, characterized the relation of the two brothers to the property in these words: “ The truth of the matter is I had such confidence in my brother’s management that I let him take the hotel property (which embraced the saloon) and the farm down, north, and manage them according to his best judgment.”
Upon this state of facts we think the trial court correctly in: structed the jury as to the law of the case. A principal is always answerable, civilly, for the acts of the agent done within the scope of the'agency. So too he is chargeable with all the knowledge possessed by the agent of facts involved in the trans-' action of the business with which he is intrusted. Myers v. Mut. Life Ins. Co., 99 N. Y., 1. This rule applies even in the case of fraud committed by the agent. Bank of U. S. v. Davis, 2 Hill, 452. Of course the principal is not answerable criminally for the criminal acts of the agent unless he is accessory thereto, and that requires personal guilty knowledge on his part. It may also be conceded that the latter rule applies to the case of a penalty imposed by statute for a violation of law and recoverable in a quasi criminal action.
But the statute under which this action arose is not, in any sense, a penal statute. It imposes no penalty; it contemplates no violation of law. It simply attaches to a particular traffic a particular liability. The traffic may be perfectly lawful; it may even be carried qn under the express license and permission of the state; the statute in question simply charges it with a liability for its own actual consequences, if to the injury of others. That liability is not therefore a penalty, but a burden voluntarily assumed by every person who either engages in the traffic in question, or furnishes the place of business in which it shall be carried on. That burden is the liability to respond in damages to any person sustaining certain actual pecuniary loss, as a consequence of the traffic in a particular instance. The statute, then, *322 is seen to be not penal but remedial, and to be so construed as to give effect to the remedy intended to be supplied.
That intention would be easily defeated if the owner of the property available for this business might put it into the hands of an irresponsible agent, with carte blanche to rent it as the latter saw fit, for the benefit of the former, and yet be relieved from the burden which the law casts upon the owner if the property be used for the purpose specified in the statute.
We think that upon the general doctrine of the law of principal and agent, and especially in view of the character and object of the statute under consideration, the knowledge of the agent in this case must be held to be the knowledge of the principal; in other words, that in a case like this the owner must be held to have himself permitted, within the meaning of the statute, the occupation of the building or premises for the purpose for which he has permitted his agent to rent it.
In respect to the defendant Edward Germain there can, we suppose, be no serious question but that he was, within the spirit as well as the letter of the statute, “ a person * * * renting or permitting the occupation of a building or premises, having knowledge that intoxicating liquors were to be sold therein.”
The evidence offered to the effect that, at the time of the execution of the lease to Guelph, it was understood that he was not to sell liquor on the premises, was immaterial in view of the undisputed fact that Edward Germain knew that both Guelph and McGovern did in fact carry on the business of selling liquor on the premises, each for a period of from four to six years, and paid him the rent therefor.
The jury had a right to consult the annuity tables in determining the probable duration of the joint lives of the plaintiff and her husband; and the instruction of the court in that respect was entirely correct. The expectancy of the joint lives of two persons is, necessarily, the same as that of the shortest lived of the two; in this case that of the husband, since he was several years older than his wife.
We find no exception in the case which vitiates the verdict of the jury, and that verdict determines all material facts in issue.
The judgment must be affirmed.
Macomber and Corlett, JJ., concur.