C. W. Drummond v. L. K. Krebs *et al.*

No. 426.

1. Promissory Note—*Conflicting Testimony—Findings of Trial Court Conclusive.* The question as to whether Drummond was an innocent holder for value of a negotiable promissory note before maturity having been submitted to the trial court on conflicting testimony, the findings thereon are conclusive.

2. ——— *Evidence Examined.* The alleged incompetent testimony examined, and held that it was competent and properly admitted.

3. Evidence—*Explanation of Letter.* At the trial a letter was offered in evidence which on its face appeared to have been written in relation to the matters in controversy. The writer of the letter was called as a witness and permitted to explain fully

that the letter was written concerning other matters.  *Held*, that the court properly excluded other independent testimony offered for the purpose of explaining the contention of the writer.

4.  EQUITY—*Reformation of Deed—Mutual Mistake.*  Where the terms of a bargain and sale of real estate have been agreed on and deeds and other written instruments are to be executed in performance of such agreement, but fail through mistake correctly to express the meaning of the parties as previously stated by the terms of the agreement, a court of equity should reform such deeds and instruments of writing so they may truly express that which was in fact agreed on and which they should have expressed and were intended to express.  It is not indispensably necessary, as a condition precedent for such reformation, that the trial court find in terms mutual mistake, where the findings as a whole show conclusively such mutual mistake.

Error from Atchison district court; W. D. WEBB, judge.   Opinion filed December 15, 1898.   Affirmed.

*Tufts & Crowell*, for plaintiff in error.

*Waggener, Horton & Orr*, for defendants in error.

The opinion of the court was delivered by

McELROY, J.:   This action was commenced by Drummond, plaintiff in error, against L. K. Krebs, to recover judgment on two negotiable promissory notes for $232 and $216, respectively, and for the foreclosure of a mortgage.   All other defendants were made parties because of their having signed the mortgage, or because of some interest they were supposed to have in the real estate described therein.   The defendants L. K. Krebs, Charles H. Krebs, D. N. Wheeler, Drusilla G. Johnson and G. H. T. Johnson made no appearance in the trial court.

The defendant Lissa Martin, with her husband, David Martin, filed an answer and cross-petition, which were adopted by all other answering defendants as their separate answer and cross-petition.   The

answer (1) admits the execution and delivery of the notes and mortgage; (2) denies that C. W. Drummond obtained the notes in the regular course of business for value, before maturity, and denies that he is the owner of the notes, or that he is the real party in interest; (3) and by way of cross-petition alleges that the real estate in question was, on March 8, 1887, the property of Jacob Emler; that on that date John M. Crowell and George Storch obtained an option for the purchase of the property within sixty days on speculation, and they then, with S. B. Glazier, who was associated with them, began the organization of a "Ladies' Syndicate" for the purchase of the lots to this effect: that the property should be purchased in fifteen shares, by that many different ladies, at $600 for each share, of which $200 should be paid in cash, the remaining $400 for each share to be paid in two equal annual instalments, for which each lady was to give her own two individual promissory notes, one for $232 including interest, payable in one year, and the other for $216 including interest, payable in two years, said two promissory notes to be secured by mortgage of such share by the purchaser; that in pursuance of such arrangement, at the request of John M. Crowell, George Storch, and Samuel B. Glazier, the following-named ladies became members of the purchasing syndicate: Mary Rutledge, L. K. Krebs, Ella Ballentine, Maddie Murphy, Elizabeth H. Clark, Drusilla G. Johnson, Caroline Prentis, Cora M. Playle, D. B. Wheeler, F. Cossette Fagan, Lissa Martin, Anna L. Kipp, Thekla Janssen, Helen G. Campbell, and Eva L. Martin; that each of said ladies paid for herself to S. B. Glazier the sum of $200, which was accepted as the cash payment, and each lady for herself, on April 11, 1887, gave her individual prom-

issory notes payable in one and two years; that on April 27, 1887, John M. Crowell executed a deed for the premises, bearing date of April 11, 1887, which for convenience named all of the fifteen ladies as grantees, without stating the share of each, and at several different times and on divers days the fifteen ladies, with their husbands, signed and acknowledged the mortgage set out in plaintiff's petition; that each of the fifteen ladies named, except Mrs. L. K. Krebs, paid the amount due on her two separate notes; that all of the dealings of the grantors and the holders of the promissory notes with the members of the so-called "Ladies' Syndicate" have been with them as individuals, as it has ever been agreed and understood such dealings should be, and on the assumption that each of the ladies for herself mortgaged her share of the real estate to secure her own individual promissory notes, and not the notes of any other person; that the mortgage, by mutual mistake, does not truly express the contract in this, that it purports to secure the payment of thirty promissory notes executed by each of the fifteen ladies, whereas, in truth and in fact, no such promissory notes were executed, and no one of the ladies named was bound for the payment of the shares of any other member thereof; that the mortgage was executed only to secure the payment of each individual share according to the tenor and effect of the promissory notes in the same manner as if each lady had executed a separate mortgage on her interest in the real property; that the mortgage should be so construed, and if the same cannot be so construed, then the mortgage should be by the court reformed to express such intention; and that it was the intention of the party drawing the mortgage so to express the contract that was made.

The plaintiff filed a reply consisting of a general denial. The case was tried before the court without a jury, and the court took the case under advisement, made special findings of fact and conclusions of law, and rendered judgment for plaintiff, against L. K. Krebs for $656.78, and costs of suit, and ordered a sale of an undivided three-fifteenths of the real estate described to pay the judgment, and ordered a reformation of the mortgage and the release of the twelve answering interests. The plaintiff filed a motion for a new trial, which was overruled, and presents the case to this court for review, alleging error in the proceedings of the trial court.

It is first contended that the court erred in not rendering judgment for plaintiff in error on the notes and mortgage according to the written terms thereof under the allegations of the petition and evidence. The plaintiff in error became the holder of the notes by assignment. His contention is that he is an innocent holder of the notes and mortgage, and is entitled to judgment thereon according to the terms expressed therein. On the other hand, it is the contention of the defendants that Drummond became the holder of the notes and mortgage by assignment after maturity. Samuel B. Glazier is the payee named in the notes and mortgage. The mortgage by an indorsement appears to have been assigned to plaintiff on the 15th day of August, 1891, long after maturity. There is some testimony tending to show that the notes were sold, assigned and transferred by Glazier to the United States Investment Company, in the regular course of business, for value, before maturity. The trial court found, however, that Glazier indorsed the notes as follows: "Without recourse, Samuel B. Glazier," and afterward transferred the notes and

mortgage to the plaintiff by written assignment in the following words :

"For value received, the mortgagee within named does hereby assign and transfer the notes by the foregoing mortgage secured, and does hereby assign and set over to C. W. Drummond, or his assigns, all right, title and interest to the lands and tenements in the mortgage dated April 11, 1887, on lots six (6) and seven (7), block twenty-two (22), L. C. Challis's addition to the city of Atchison, Kansas, and recorded in book 73, page 555, in the register of deeds' office in said county. In witness whereof, I have hereunto set my hand and seal, on this 15th day of August, A. D. 1891.                 S. B. GLAZIER."

This finding of the trial court is supported by some testimony. The testimony was conflicting on this question, and the findings of the court are conclusive thereon. This precludes the plaintiff in error from claiming any of the rights of a *bona fide* purchaser for value. There is, however, on the other hand, some evidence to support the contention that before maturity Glazier sold, assigned and transferred the notes to the United States Investment Company. As opposed to this contention there is an assignment of the notes and mortgage bearing date August 15, 1891, as above set out in the findings of the trial court.

If it be conceded, as claimed by the plaintiff in error, that the notes and mortgage were, before maturity, for value transferred to the United States Investment Company, would plaintiff in error be in any better condition? The record shows that John M. Crowell in 1887 purchased from Jacob Emler the two lots of land in controversy, and the title was taken in his name. Immediately thereafter George Storch, Samuel B. Glazier and F. W. Hunton were each given a one-fourth interest in the transaction and a one-fourth interest in the profits to accrue by reason of the

purchase and intended sale thereof. Glazier was the president and Hunton the secretary and treasurer of the United States Investment Company. They had the control and management of the company, and were the officers through whom the company transacted its business — the persons through whom the notes could be purchased by the company. Through these officers the investment company had notice of the equities, if such existed, of the mortgagors. This notice being possessed by Glazier and Hunton, the representatives of the corporation, it was binding upon the corporate body. (*Hyatt v. Clark*, 118 N. Y. 563, 23 N. E. 891; *Mann v. National Bank*, 30 Kan. 412, 1 Pac. 579.)

It is next claimed that the court erred in admitting incompetent, irrelevant and immaterial testimony on behalf of the defendants. Complaint is made that there is no foundation in the record for an admission of any conversations and statements of Vandergrift. There was some evidence tending to show that Vandergrift was the agent of Crowell, Glazier, Storch and Hunton in negotiating the sale of the property to the Ladies' Syndicate. Crowell testified that Vandergrift applied to him and told him he could sell the property for him, and Crowell answered, "All right, go ahead with the sale." Crowell further testified:

"Q. You authorized Mr. Vandergrift and Mr. Glazier to make a sale of it? A. Make a sale of it. I did not know they were going to do it, because I could get more for it. I consented to it; yes, sir."

Storch testified:

"Q. Mr. Storch, state what, if any, conversation you had with any one acting for or on behalf of these ladies of the syndicate in regard to how the notes and mortgage should be drawn. A. I do not think I ever discussed it with anybody.

Drummond v. Krebs.

" Q. Did you ever have any talk with either one of these ladies that formed this syndicate that purchased the property prior to the making out of this mortgage and notes? A. Not that I remember.

" Q. Then all the information that came to your knowledge about this property being sold to this syndicate for $9000 came through Mr. Vandergrift? A. Yes, sir.

" Q. Then is it not a fact that so far as the terms of the sale and terms of security were concerned all of the negotiation was done by them ( Hunton, Glazier, and Vandergrift ), and that you had nothing to do with it except when it came to drawing up the papers? A. I did not make the bargain with them.

" Q. You had nothing to do with it? A. The sale was reported the same as many others are to me, and I make out the papers and send them out, and if they are signed that is a bargain."

It appears that there was some foundation for the admission of the conversations and statements of Vandergrift, and there was some evidence of his agency—sufficient, at least, to permit the admission of his acts and declarations.

It is claimed that witnesses were permitted to state their conclusions and understanding as to the conversations with Glazier, Hunton, and Vandergrift. It is true that the witnesses did not claim to give the exact language used by the parties in the conversation. That can rarely be done. They seem to have testified to the substance of the conversations, and this, we think, was permissible.

Complaint is made that there was no foundation for the admission of conversations and statements made by Mrs. Prentis to her codefendants. The contract for the sale and purchase of the real estate in question appears to have been stated first by Vandergrift, Glazier and Hunton to Mrs. Prentis. Mrs. Prentis testified " that she was one of the first members of

the so-called Ladies' Syndicate; that Glazier, Hunton and Vandergrift were the main promoters of the syndicate and sale." She then testified to the contract of sale as stated by these parties to her; that at the solicitation of Glazier, Hunton and Vandergrift she called on the other ladies and told them the terms of the contract. It appears from this testimony that Mrs. Prentis was by these parties constituted their agent for the purpose of making known the terms of the contract of sale and purchase to her codefendants, and that she was their agent for that purpose and to that extent. The testimony was properly admitted.

It is contended that the testimony of the defendants in support of their cross-petition "as to what they understood and believed when they signed the mortgage" is incompetent. This objection appears to be very technical. The witnesses evidently referred to the understanding and intent as expressed in the agreement made between the parties, as they understood it to be, that is, the agreement that was actually made in the sale and purchase of the property. The testimony appears to have been competent.

There is no merit in the contention that the court permitted leading questions to be asked and answered.

The rulings on questions as to the admission of evidence in a trial before a court are more liberal than where a trial is had by a jury. There are portions of the testimony of which complaint is made that appear to be irrelevant and immaterial, but from an examination of all of the evidence we are satisfied that no prejudicial error was committed by the trial court in the admission of evidence. The rule as stated in the American and English Encyclopedia of Pleading and Practice, volume 2, page 567, is, we think, the correct rule in such cases:

"Where the record shows that sufficient evidence

Drummond v. Krebs.

was introduced to sustain the findings of the trial judge in a case tried to the court alone, the judgment will not be reversed for the erroneous admission of evidence, as the judge will be presumed to have disregarded it in making the findings, unless it is clear that he was influenced thereby."

It is further contended that the court erred in rejecting proper competent testimony offered by plaintiff in error. During the trial a letter written by George Storch to Mrs. Prentis was introduced in evidence for the purpose of contradicting portions of his testimony. The witness Storch explained that the letter and the statements therein contained had no reference to anything connected with this case. The witness was allowed to make a full explanation of the letter and his version of the same. The court excluded other independent testimony offered for the purpose of explaining his contention. The court committed no error in rejecting the offered testimony.

Again, it is claimed that the court erred in overruling the motion of the plaintiff for a new trial. The sole controversy in this case was whether the plaintiff Drummond was entitled to a lien for the money due him from Krebs on the whole of the mortgaged property, or whether the twelve answering interests, two of the same being owned by Mrs. Martin, should be released from the lien of the mortgage. Was there a mutual mistake, such a mistake as to require the reformation of the mortgage? This mortgage was written and prepared by Storch without any inquiry on his part as to what agreement and contract had been made between the parties. It was signed and acknowledged by the defendants without inquiry or investigation, relying with apparent confidence on the belief that the mortgage had been prepared according to the contract originally made. The evidence shows that

Glazier, Hunton and Vandergrift made an agreement with Mrs. Prentis and Mrs. Wheeler, and through them with the rest of the defendants, as to the terms of the sale and purchase, to the effect that each purchaser should be liable only for the payment of her individual portion of the cash and notes, and that the mortgage to secure the deferred payments should be, in effect, a mortgage on the individual interest of each of the purchasers for the amount of her deferred payments. On these terms the bargain was closed, and there remained nothing but the execution of the written instrument to carry into effect this agreement. Storch prepared the papers for execution without inquiry as to what were the real terms of the contract of sale and purchase. Crowell, Storch, Glazier and Hunton were partners in the sale of the real estate in question, and any one of them had authority as such to negotiate a sale and to fix the terms of purchase. Vandergrift by direct permission had authority to sell the premises in question, without any limit as to his authority to fix the terms of sale and terms for the payment of the purchase-price. Where the terms of a bargain and sale have been agreed on and deeds and other written instruments are to be executed in performance of the previous agreement, but fail through mistake correctly to express the meaning of the parties as previously settled by the terms of the agreement, a court of equity should reform such deeds and instruments of writing so that they may truly express that which was in fact agreed on and which they should have expressed and were intended to express. The trial court found in effect mutual mistake. The findings are supported by the evidence. The record discloses a proper case for a reformation of the mortgage and for the relief prayed for.

There were no errors of law occurring at the trial which prejudicially affected the substantial rights of the plaintiff in error. Therefore, the motion for a new trial was properly overruled. The judgment will be affirmed.