The Meriden National · Bank, Appellant, *v.* Peter W. Gallaudet, Respondent.

A person who sells commercial paper as his own is understood to warrant his title thereto to be good, and that the instrument is genuine.

A copartnership may exist, and the parties to it be bound even though there is no firm name. If one has been agreed upon, it must be used in order to bind the firm, but if none has been agreed upon, a name that fairly represents the company may be adopted, and, by custom and use, become its valid name.

In an action to recover damages for a breach of warranty in the sale of a promissory note which purported to have been made by F. & Co., payable to the order of B., who indorsed it, plaintiff claimed the note was sold to it by defendant as owner, and that no such firm existed. It was proved that the name of F. & Co. was signed by B., who, with F., were engaged in a joint enterprise, and had jointly made contracts with other parties in reference thereto; that by the arrangement between them B. was to have the general management of the business, and the profits were to be divided equally between them; that the note was given to pay expenses incurred in the joint enterprise; that an agreement with another party was reduced to writing in the form of a letter by B., and ·signed F. & Co., by him; this was submitted to F. before it was transmitted.   *Held*, the evidence authorized a finding that a copartnership existed, and that the name used had been adopted as the firm name.

It appeared that defendant was in fact the agent of B. in selling the note, and the money received, less commissions, was paid over to the latter. .Plaintiff wrote to defendant a letter, inquiring in regard to the note and the indorser; defendant answered, using a letter-head, describing him-. self as a "banker and dealer in commercial paper," and stating that he "bought and sold on commission" stocks, bonds, etc.   In the letter defendant stated that he still held the note.   The court submitted to the jury the question as to whether defendant disclosed his agency in mak-, ing the sale, and as to whether there was an implied warranty that the note was genuine.   *Held*, error; that these questions should have been disposed of by the court.

*M. N. Bank* v. *Gallaudet* (23 J. & S. 233   reversed.

(Argued March 17, 1890; decided April 29, 1890.)

Appeal from judgment of the General Term of the Superior Court in the city of New York, entered upon an order made the first Monday of December, 1887, which affirmed a judg-

ment in favor of defendant entered upon a verdict, and affirmed an order denying a motion for a new trial.

The nature of the action and the facts are sufficiently stated in the opinion.

*Wm. H. Arnoux* for appellant. In every sale of a chose in action there is an absolute implied warranty by the vendor who is not an indorser that the paper is genuine, and that the parties are competent to contract as expressed therein and that he knows of no defect of any kind whatever therein. (*Marvin* v. *Jarvis*, 20 N. Y. 226; *Fake* v. *Smith*, 7 Abb. [N. S.] 106; *Webb* v. *Odell*, 49 N. Y. 583; *Ross* v. *Terry*, 63 id. 613; *Gale* v. *Miller*, 54 id. 536; 19 id. 227; 35 id. 207; *Littaner* v. *Goldman*, 72 id. 510; 2 Parsons on Cont. 37, 38; *Herrick* v. *Whitney*, 15 Johns. 240; Story on Prom. Notes, § 118; Chitty on Bills, 245; *Shaver* v. *Ehle*, 16 Johns. 201; *Terry* v. *Bissell*, 26 Conn. 23; *Coolidge* v. *Brigham*, 5 Metc. 68; *Gompert* v. *Bartlett*, 75 Eng. Ch. 849; Benj. on Sales, § 609.) For this breach of implied warranty the defendant was liable to the plaintiff as the principal in the transaction as a principle of law. (*White* v. *C. Bk.*, 64 N. Y. 306; *Mills* v. *Hunt*, 20 Wend. 431; *C. Bk.* v. *Bank*, 1 Hill, 287; *Holt* v. *Ross*, 54 N. Y. 472; 2 Rudolph on Com. Paper, § 753; 4 N. Y. 208; 9 id. 570; *Bank of Rochester* v. *Monteath*, 1 Den. 402.) The relation between Farrell and Babbott did not constitute a commercial partnership, and, therefore, neither had any power or authority to issue negotiable paper that could bind the other. (*Judge* v. *Buswell*, 13 Busk, 67; *Hedley* v. *Bainbridge*, L. R. [3 Q. B.] 316; Collyer on Part. 650; *Pooley* v. *Witmore*, 10 Heisk. 629; *Doty* v. *Bates*, 11 Johns. 544; *Broughton* v. *B. & S. W. Wks.*, 3 B. & S. 1; *Beamak* v. *Roberts*, 3 Bing. 963; *Livingston* v. *Roosevelt*, 4 Johns. 251; *Williams* v. *Thomas*, 6 Esp. 18; *Neale* v. *Furton*, 4 Bing. 149; *Gray* v. *Ward*, 18 Ill. 32; *Leir* v. *Latham*, 18 N. C. 509; *Benedict* v. *Thompson*, 33 La. Ann. 196; *T. N. Bk.* v. *Snyder*, 10 Nev. App. 211; *Walcott* v. *Caufield*, 3 Conn. 194; *Cocke* v. *B. Bank*, 3 Ala. 175; *Pease* v. *Cole*, 3 N. E.

Rep. 647.) Babbott and Farrell were simply joint contractors in relation to certain patents. (*Pitts* v. *Hall*, 3 Blatch. 301; Hinmann on Patents, 67; *Porter* v. *McClure*, 15 Wend. 187.) Even in an ordinary mercantile partnership Farrell would not be bound upon the note in suit. The formation of a partnership without the adoption of a firm name gives no authority to one partner alone to devise and use a firm name. (Lindley on Part. 212; *Kirk* v. *Blurton*, 9 M. & W. 283.) Farrell is not estopped from denying the existence of such partnership. (*Salter* v. *Ham*, 35 N. Y. 327; 1 Rand on Com. Paper, § 395; *Cassidy* v. *Hall*, 97 N. Y. 171.) The testimony of Frank Babbott, David Smith and Reed — the agreements, telegrams, postal cards and letters — was incompetent and erroneously admitted. It was not shown that defendant knew of such alleged declarations and circumstances before he dealt with the note. (*Cassidy* v. *Hall*, 97 N. Y. 171.)

*C. Elliott Minor* for respondent. There was no warranty implied from the facts in this case that the note in question was drawn by a firm of Franklin Farrell & Co. (*Lattaner* v. *Goldman*, 72 N. Y. 514; *Otis* v. *Cullum*, 2 Otto, 448; Laws of 1854, chap. 400; Laws of 1863, chap. 144; Laws of 1868, chap. 256; *Commonwealth* v. *Baldwin*, 11 Gray, 197; 2 Bishop on Crim. Law, § 432; 2 Russell on Crimes, 619; Penal Code, §§ 509–511.) There was no warranty, express or implied, on the sale of the note in question. The sale was consummated entirely by letter. (*Mallory* v. *T. R. R. Co.*, 5 Abb. Pr. [N. S.] 420; *Cooper* v. *Blair*, 5 Lans. 318; *Bell* v. *Dagg*, 60 N. Y. 530; *Van Ostrand* v. *Reed*, 1 Wend. 431.) Where two or more persons engage in an enterprise together, upon any basis or arrangement they please, and stipulate between themselves that profits as such shall be divided between them, they are partners as to third persons, and are liable as partners for losses. (*Greenwood* v. *Brink*, 1 Hun, 227; *Haas* v. *Root*, 16 id. 526; *Burnett* v. *Snyder*, 81 N. Y. 555; *M. B. Co.* v. *Sears*, 45 id. 797; *Mason* v. *Partridge*, 66 id. 633; *Ontario Bank* v. *Hennesy*, 48 id. 545; *Leggett*

v. *Hyde*, 58 id. 272; *Eager* v. *Crawford*, 76 id. 97; *Butler* v. *Finck*, 21 Hun, 210; *Burns* v. *Rowland*, 40 Barb. 368; *Vibbard* v. *Roderick*, 51 id. 616; *Stiles* v. *Meyer*, 7 Lans. 190; Parsons on Part. [3d ed.] 147.) The partnership between Farrell and Babbott, being established by the verdict of the jury, it follows, as a matter of law, that Wm. M. Babbott had implied authority to use the firm name of Franklin Farrell & Co., which honestly designated the firm, and to issue the note, there being no restriction on his right so to do in the agreement between Farrell and Babbott, more particularly as the money thus raised was used in the very business for which the partnership was formed. (*Bank of Chittenango* v. *Morgan*, 73 N. Y. 593; *Drake* v. *Elwyn*, 1 Caines, 184; *McGregor* v. *Cleveland*, 5 Wend. 478; Parsons on Part. [3d ed.] 125, 137, 279; *Aspinwall* v. *Williams*, 1 Hamm. 38; *Ripley* v. *Colley*, 3 Foster, 443; *Lekon* v. *Johnson*, 2 Pet. 176, 186; *Whittaker* v. *Brown*, 16 Wend. 505.) No exception can be available which does not point out the specific error. (*Ayrault* v. *P. Bank*, 47 N. Y. 576.) The only exceptions which can be considered are those to the charge as delivered or refusals to charge, and not to something said in a discussion happening before the charge is made. (3 Wait's Prac. 182.) It is competent to prove that defendant acted as broker for Wm. M. Babbott, and that it was so understood by the plaintiff, and is within the rule that agency is proved by the nature of the transaction and the situation of the parties. (*Dows* v. *Greene*, 16 Barb. 77; *Whitehead* v. *Tuckett*, 15 East. 400; 2 Greenl. on Ev. § 60; Story on Agency, § 45; Paley on Agency, 2; 2 Kent's Com. 613, 614.) It was not error for the judge to charge the jury that "it is a rule applicable to sales of negotiable paper that ordinarily the seller impliedly warrants the genuineness of the paper sold by him, but if the circumstances point the other way, then the implication does not arise. You are, therefore, to look at all the circumstances concerning the sales in question, and if they negative the implication ordinarily arising, then the defendant is entitled to your verdict." (*Bell* v. *Dagg*, 60 N. Y. 530;

*Wait* v. *A. Ins. Co.*, 13 Hun, 374.) The charge of the judge, leaving it to the jury to say, from the circumstances, whether there was an implied warranty of genuineness, was more favorable to the plaintiff than it should properly have been, and, therefore, the plaintiff is in no position to object to it, or on that ground to base his claim for a new trial. (*Slipperly* v. *Stewart*, 50 Barb. 62; *Cooper* v. *Blair*, 5 Lans. 318; *Mallory* v. *T. R. R. Co.*, 5 Abb. Pr. [N. S.] 420; *Van Ostrand* v. *Reed*, 1 Wend. 431; *Pierce* v. *Fuller*, 36 Hun, 179; *Whittemore* v. *Farrington*, 76 N. Y. 452.) The exception to the judge's charge to look at all the circumstances to determine whether there was an implied authority to Babbott to use the name Franklin Farrell & Co., and also to submitting to the jury the question of an implied authority to issue the note in question are not well taken. (*Miller* v. *E. Ins. Co.*, 2 E. D. Smith, 268; *Hall* v. *Suydam*, 6 Barb. 83; *Campton* v. *McNair*, 1 Wend. 457; *Depeyster* v. *C. Ins. Co.*, 2 Cal. 85; *Alston* v. *Jones*, 17 Barb. 276; 101 N. Y. 277; *People* v. *Dimmick*, 41 Hun, 616; *Mallory* v. *T. R. R. Co.*, 5 Abb. Pr. [N. S.] 420.) The courts of this state have held that a partnership for a particular purpose cannot be terminated at the will of either, and so far as Farrell and Babbott bound themselves by contract of April thirtieth, to build and operate a machine, the copartnership was for that particular object and could not be terminated until that was accomplished. (*Hubbell* v. *Buhler*, 43 Hun, 82.) The payee of a note can collect it from the partnership after dissolution when it is made by one of the partners, unless he had notice of the dissolution. (*Bristol* v. *Sprague*, 8 Wend. 423; *City Bank* v. *McChesney*, 20 N. Y. 240–244; *Gould* v. *Horner*, 12 Barb. 601.) Where no definite time is fixed for dissolution, though the firm may be dissolved as between themselves, at any time, on notice, yet, until such notice is given, the partnership is deemed to continue indefinitely. (*Struthers* v. *Pearce*, 51 N. Y. 357.) As to third parties dealing with the firm, they must have actual notice of dissolution or constructive notice by publication in the press, or the partnership will be held on

a note indorsed by one of the partners in the firm name. (*Bank of Brooklyn* v. *McChesney*, 20 N. Y. 240–244; *N. S. & L. Bank* v. *Herz*, 89 id. 629; *Austin* v. *Holland*, 69 id. 571.) Any copartnership which requires capital and credit and is a trading concern, impliedly gives each and all of the members thereof the right to issue commercial paper. (Daniels on Neg. Inst. § 358; *Kimbro* v. *Bullet*, 22 How. [U. S.] 256.)

Haight, J. This action was brought to recover damages for breach of warranty in the sale of a promissory note purporting to be made by Franklin Farrell & Co., to the order of W. M. Babbott, and indorsed by him, the plaintiff claiming that there was no such firm as Franklin Farreli & Co., and that consequently the note was not genuine. The defendant claims that he sold the note to plaintiff as the agent of Babbott; that there was such a firm, and that the note was a genuine note thereof.

A person who sells commercial paper as his own is understood to warrant his title thereto to be good, and that the instrument is genuine. (*Littauer* v. *Goldman*, 72 N. Y. 506; *Delaware Bank* v. *Jarvis*, 20 N. Y. 226; *Fake* v. *Smith*, 7 Abb. [N. S.] 106.)

Assuming, therefore, that the note was sold by the defendant as his own, and that the law implies a warranty on his part that the note was genuine, it becomes necessary to determine whether or not it was the genuine note of Franklin Farrell & Co. The evidence is that the name of Franklin Farrell & Co. was signed by W. M. Babbott, and it is claimed that Franklin Farrell and William M. Babbott were copartners, engaged in business; that the note was given to raise money to carry on such business, and that Babbott had lawful authority to so execute the instrument. This question was submitted to the jury, and it remains for us to determine whether there was sufficient evidence to justify such submission. It appears that business relation commenced between Farrell and Babbott about the month of February, 1879; they then had some conversation in reference to the manufacture and sale of

ice refrigerating machines. The first arrangement which appears in writing was made with one Thomas Cook, in which Cook was to apply for and assign all of his patents relating to or growing out of the business to the company; that he was to put his one-third interest in the Pennsylvania company into the Cook Ice and Refrigerating Machine Company, and to use his influence to combine all interests for the benefit of the company; he was to teach Farrell and Babbott the business in all its branches, and at the earliest possible moment to complete drafts and specifications for small machines and adapt them to transportation, and was to put Farrell and Babbott on the board of directors. "Mr. Farrell and Mr. Babbott to have transportation to work on moiety of profits on the same terms as proposed by the Philadelphia parties when called for, etc." This instrument is signed by Thomas Cook, Franklin Farrell and W. M. Babbott. The next instrument is a contract dated the 22d day of March, 1879, between the Cook Ice and Refrigerating Machine Company of the first part, and Franklin Farrell of Ansonia, in the state of Connecticut, and W. M. Babbott of the city of New York, of the second part. It recites certain letters-patent issued by the United States for certain improvements in ice refrigerating machines and apparatus, and that the parties of the second part are desirous of acquiring certain rights which are therein specified, and then, among other things, provides: "First. The said parties of the second part shall, with all diligence and despatch and without expense or charge to the party of the first part, manufacture a refrigeratering machine under the said patents, and for the purpose of aiding and benefitting the business hereinafter mentioned; shall run the said machine at least for two months succeeding the time of its completion; and second, the said parties of the second part shall use their best endeavor to introduce machines and apparatus containing said patented improvements to public notice and create a demand therefor, and shall use reasonable diligence to build or cause to be built said machines and apparatus to fill any *bona fide* orders which may be given for the same by responsible parties for such prices and upon such

terms and conditions as shall from time to time be agreed upon by the parties hereto, and shall also use reasonable diligence and their best endeavors to effect sales of interests, rights or licenses in or under said letters-patent, etc." The next contract executed by the parties bears date July 1, 1879, and is in the form of a letter addressed to David Smith, Esq., in which Franklin Farrell and W. M. Babbott agree to pay him $175 per month, for nine months, with the privilege of extending the time to October 1, 1880, for the purpose of developing, as they may think best, the Cook principle of manufacturing cold air by refrigerating machines, etc. It is true that these instruments are executed by each of the parties thereto in their own name, and that Farrell and Babbott may be said to be joint contractors, but these instruments establish the fact that they had engaged in a joint enterprise and business, and had made contracts with other parties. Numerous letters, telegrams and talks took place between them in reference to the contemplated business. They had agreed to construct a trial machine, and to run it for a specified time so as to test its practicability and create a demand for it in the market. Babbott testifies to the oral arrangement between him and Farrell, in which it was understood that he was to have the general management of the business; that Farrell was to manufacture the machines and furnish the money therefor, and that the profits were to be divided equally between them; that Smith, who was employed by them, was a practical machine manufacturer, and that the trial machine was to be constructed by him in Blackwell's warehouse in Greenwich street, but was finally placed in building No. 45 Clarkson street; that Farrell employed a man by the name of Green to draw plans for a part of the machine and sent him to New York with a letter of introduction to Babbott; that a portion of the machine was ordered immediately after the employment of Mr. Smith; that Babbott proceeded with the construction of the trial machine and arranged with Blackwell & Co. to put it up in the warehouse at No. 45 Clarkson street, putting the arrangement into writing in the form of a letter, which

was signed "Franklin Farrell & Co.," he sending a copy by mail to Farrell. It further appeared that this note was given after he had incurred expenses in putting up this machine.

Whilst this evidence may not be very satisfactory, we are inclined to the opinion that it is sufficient to carry the case to the jury for its determination as to whether or not there was a copartnership. It is true that nothing was said about how the losses should be shared, but we must assume that it was understood that they were to be borne equally in view of the fact that it was agreed that the profits were to be shared equally. It is also true that it does not appear that there was any firm name agreed upon under which they should conduct their business, but a copartnership may exist and the parties be bound even though there is no firm name. Had the note in suit been drawn payable to the order of Smith and delivered to him in payment for his services and expenditures in the construction of the machine we should not long hesitate upon the liability of Farrell thereon. (*First Nat. Bk. of Chittenango* v. *Morgan*, 73 N. Y. 593; *Whitaker* v. *Brown*, 16 Wend. 505.)

If a copartnership name has been agreed upon it must be used in order to bind the firm, but if none has been agreed upon a name that fairly represents the company may be adopted, and, by custom and use, become its valid name. (Parsons on Part. 125.)

The business engaged in involved the preparing of plans and specifications, the purchasing of materials and the manufacturing of machinery. It involved the contracting of obligations and the expenditures of considerable sums of money, and we are inclined to the view that it was such a copartnership, in which the rule is recognized, that one partner is impliedly authorized to give notes in the firm's name.

Upon the trial Babbott had given evidence to the effect that he had paid Smith for the work performed by him upon the machine about the sum of $2,500. The defendant's counsel then offered to read from the minutes of the former trial. Objection was taken as incompetent, which was over-

ruled, and he then read a list of items amounting in the total to $2,495. We do not understand upon what theory this evidence was competent. It was not brought within the provisions of section 830 of the Code of Civil Procedure, neither does it tend to contradict any testimony that had previously been called out.

The court submitted to the jury the questions as to whether or not the defendant disclosed his agency in making the sale, and as to whether there was an implied warranty that the note was genuine. Of this submission the plaintiff complains and takes an exception, urging that these questions should have been disposed of by the court. It appears from the testimony that the defendant was in fact the agent of Babbott in making the sale of the note, and that on receiving the money therefor from the plaintiff the same was paid over to Babbott, the defendant retaining his commissions only. It does not appear from any express statement made by the defendant to the officers of the plaintiff that his agency was disclosed. It is claimed, however, that the fact of such agency was known and understood by the officers of the plaintiff. The first communication we have upon the subject is a letter from the cashier of the plaintiff to the defendant, in which he says: "Dear sir: You have a note Franklin Farrell I understand end. at 7 per cent. Please inform me who is the endorser." To this letter the defendant answered upon one of his letter-heads, on which was printed the following: "P. W. Gallaudet, banker and dealer in commercial paper. Stocks, bonds and gold bought and sold on commission. 3 and 5 Wall street." In the body of the letter he states as follows: "Gents: I still have note of Franklin Farrell & Co., Ansonia, Ct., end. by W. M. Babbott, due Mch. 18, 7 per cent, (2,800.00). Babbott is reputed to be worth 15 to 20 M., and is said to be interested in some patents manufactured by the Farrell Yale Lock Mfg. Co., Stamford, Ct." The plaintiff, on the receipt of this letter, ordered the note Franklin Farrell & Co., which was forwarded by the defendant, the plaintiff returning its draft therefor. It does not

appear whether the plaintiff and defendant had had other business transactions. The first letter by the plaintiff's cashier states that he understands that the defendant has a note of Franklin Farrell. The source of his information is not stated. Mr. Fay, an attorney for the bank, was sworn as a witness on behalf of the plaintiff, and gave testimony in reference to conversation had with Babbott, in which he stated to Babbott that he had been sent for to determine the question as to whether there was a competent relation between Farrell and Babbott with reference to seeking a redress on the notes which the bank had purchased from the defendant as a broker. It is not understood, however, that he was an officer of the bank, or was present or had personal knowledge of the actual transaction between the officers of the bank and defendant. There is nothing in the language used that tends to indicate who the principal was, and we have been unable to find any evidence that raises a question of fact upon this subject. We are, therefore, of the opinion that the plaintiff was entitled to have this question disposed of by the court, and the jury instructed that the defendant in making the sale of the note in question did not disclose his principal.

The question as to whether there was an implied warranty depends upon the facts as to whether the defendant was an agent and disclosed his agency to the plaintiff, or whether that fact was known and understood by its officers in making the purchase.

For these reasons the judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.