## COMMERCIAL BANK v. WATERS.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

PERSONAL OBLIGATION OF AGENT—DISCLOSED PRINCIPAL—GUARANTY.

Defendant, a note broker, wrote a letter to plaintiff, a bank, offering certain paper of D. for discount, and stated that he received a large amount of D.'s business notes each week, and that in the past they were promptly met; that D. was doing a good business, and in case

the bank discounted the paper offered, and by chance any paper taken should become overdue, to notify him, and he would have a draft therefor "in your hands in three days' time." The bank's cashier knew that defendant was handling D.'s paper as a broker. Plaintiff answered, accepting the offer; stating that it thought the paper of the best grade, and in case, in future, defendant had more to offer, it would buy same. The paper was indorsed by D., but not by defendant. *Held*, that defendant was acting for a disclosed principal, and his letter did not constitute a personal guaranty.

McLennan, J., dissenting.

Action by the Commercial Bank against Irving E. Waters. There was a judgment in favor of plaintiff, and defendant moved for a new trial, which motion was directed to be heard in the first instance at the appellate division. Motion granted.

Upon December 18, 1897, this defendant sent to the plaintiff's cashier a letter which reads substantially as follows:

"Buffalo, N. Y., Dec. 18th, 1897.

"T. J. Swanton, Esq. Cash., Rochester—Dear Sir: I herewith present to you the following business paper, received this day from Messrs. Alfred Dolge & Son, viz.:

| Note | | |
|---|---|---|
| Dan'l Green & Co., Apl. 18th | $2,588 62 | |
| C. F. Zimmerman Co., May 10th | 642 59 | 1—8 |
| C. H. Sichty, Apl. 3rd | 111 00 | Pd. 1—8 |
| The S. E. Clark Co., Mch. 7th | 100 00 | Pd. 1—8 |
| Geo. R. Fleming Co., Fcby. 11th | 107 06 | Pd. |
| Lindeman & Sons Piano Co., Apl. 13th | 145 96 | Pd. |
| Gust Swanson, Apl. 11th | 108 00 | 1—8 |
| | $3,803 23 | |

—Which, if satisfactory, please discount at 6 per cent., and Ex. as marked, and send me New York draft for proceeds, with statement showing discount, etc., taken on each note. Or kindly return the same by first mail. I receive from this firm five or more thousand dollars worth of their business notes each week. Last year I handled over $300,000 worth, of which less than 1 per cent. was paid at maturity. Have never had a renewal asked for, and, by chance should any paper you take pass due date, please advise me at once, and I will have draft in your hands in three days' time for payment. Their business in 1896 was over two millions. Awaiting your reply, I remain,

"Yours, truly,                I. E. Waters."

In response to this letter the plaintiff's cashier wrote to the defendant as follows:

"Commercial Bank.

"Rochester, N. Y., Dec. 20th, '97.

"I. E. Waters, Esq., Buffalo, N. Y.—Dear Friend Waters: Your valued favor of the 18th inst., with notes inclosed, is at hand. The note of the Milsom R. & F. Co. for $5,000 matures on the 29th inst., and, assuming that it will be paid, I cheerfully discount for you the paper sent us, and inclose herein our draft for $3,725.08, proceeds of same, and also discount memorandum. We certainly think the paper sent us is of the first grade, and, if you have more to offer a little later on, I will thank you to send it to us, and, if it meets with our approval, we will purchase the same. I herein return the letters and mercantile report.

"Yours, very truly,            T. J. Swanton, Cashier."

Dolge & Son were large manufacturers, and the paper, the discount of which was negotiated by the defendant, was their customers' paper, which bore their indorsement. Thereafter Dolge & Son failed, and, upon failure to collect two of the notes mentioned in the letter of December 18th, this action was brought against this defendant, upon the claim that his letter of Decem-

ber 18th contained a personal guaranty of the notes. The court at trial term so held, and directed judgment against the defendant for the full amount. The exceptions were directed to be heard in the first instance at the appellate division, and the questions now arise upon a motion for a new trial made by the defendant at this court upon those exceptions.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

Horace McGuire, for plaintiff.

Jeremiah J. Hurley, for defendant.

SMITH, J. In Mechem, Ag. § 558, it is said:

"It is undoubtedly competent for an agent, although fully authorized to bind his principal, to pledge instead his own personal responsibility, if he prefers. The presumption is that the agent intends to bind his principal, but, where he expressly charges himself personally, he will be so held."

In Story, Ag. § 261, it is said:

"When a man is known to be acting and contracting merely as an agent of another, who is also known as the principal, his acts and contracts, if he possesses full authority for the purpose, will be deemed the acts and contracts of the principal only, and will involve no personal responsibility on the part of the agent."

In Whitney v. Wyman, 101 U. S. 396, the opinion reads:

"If the contract be unsealed, and the meaning clear, it matters not how it is phrased, nor how it is signed,—whether by the agent for the principal, or with the name of the principal by the agent, or otherwise. The intent developed is alone material, and when that is ascertained it is conclusive. Where the principal is disclosed, and the agent is known to be acting as such, the latter cannot be made personally liable, unless he agree to be so."

In 1 Am. & Eng. Enc. Law (2d Ed.) p. 1120, the rule is stated:

"The presumption is that an agent always intends to bind his principal, and not himself."

In Johnson v. Smith, 21 Conn. 627, it is held:

"Though a person duly authorized as agent, and acting as such, may bind himself personally, yet this must be done by language clearly expressive of such intent."

In Hall v. Lauderdale, 46 N. Y. 74, in the opinion of Andrews, J., it is said:

"When the agency is disclosed, and the contract relates to the matter of the agency, and is within the authority conferred, the agent will not be personally bound, unless upon clear and explicit evidence of an intention to substitute or to superadd his personal liability for or to that of the principal. In case of written agreements executed by an agent, the agent is not generally personally bound, if the instrument can have any legal operation against the principal."

See, also, Bank of Genesee v. Patchin Bank, 19 N. Y. 320.

In McDonough v. Templeman, 1 Har. & J. 156, one Burrows and Templeman made an agreement, in the beginning of which it was recited that Templeman was acting in behalf of the Georgetown Bridge Company, and the agreement further read:

"And the said John Templeman doeth agree to pay for each of said slaves * * * $60. * * * The said sum of $420 to be paid by the said John Templeman unto the said Morris J. McDonough, or his order, on the said

25th of December next. * * * In witness whereof, the parties have here-
unto set their hands and affixed their seal the day above first written.
"[Signed]           Edward Burrows.    [L. S.]
                    "John Templeman.    [L. S.]"

The action was brought to enforce a personal liability of Temple-
man upon the contract. The court of appeals, reversing the judg-
ment of the general court, were of the opinion that Templeman
acted as agent of the Georgetown Bridge Company, and did not by
the contract make himself personally liable. See, also, Town of
Hanover v. Eaton, 3 N. H. 38.

In Field's Civil Code, section 1006 reads:

"An agent is responsible to a third person for his acts in the course of his
agency in the following cases only: First, when with his consent credit is
given to him personally in a transaction; second, when his principal is not
responsible for his acts, and he has no right to suppose his principal thus
responsible; third, when his acts are wrongful in their nature."

While this Civil Code never became part of the statute law of
the state, it was intended almost entirely to be a mere codification
of the common law, and as such is most valuable as a commentary
by its learned author.

The plaintiff's cashier to whom the letter was written from which
liability is here claimed swore that he knew that the defendant was
acting as broker for various concerns, and that he was handling
the paper of Dolge & Son as broker. His testimony that he did not
know that the defendant was agent of the firm is a mere quibble.
A broker is nothing more or less than an agent. Sibbald's Case, 83
N. Y. 381. Moreover, the letter itself, by fair import, discloses the
agency, discloses the principal for whom defendant was acting, and,
as if to make it the more clear, states the extent of the discount
which defendant was negotiating for his principal. The apparent
purpose of this statement is to induce a discount by showing a
good customer. After making that statement, the defendant pro-
ceeds to make the statement upon which his individual liability is
claimed to be based, to wit: "And, by chance should any paper
you take pass due date, please advise me at once, and I will have
draft in your hands in three days' time for payment." From this
letter, then, disclosing his agency and his principal, written, con-
fessedly in the prosecution of the agency, to one who knew of the
agency, and who before had negotiated with him as such agent,
this single clause is picked out to fasten a personal liability upon
him. The balance of the letter was written in behalf of his princi-
pal. Had he desired to change at this point the character in which
he was writing, he would have used words clearly indicating the
change, and indicating that he was then offering his personal re-
sponsibility. That a personal responsibility was not understood or
relied upon by the plaintiff is apparent from all the subsequent nego-
tiations between the parties. The letter in reply to the defendant's
letter in no way suggests a reliance upon any personal liability of
the defendant. Nor is it the custom of banks to take personal guar-
anties in this form; and, moreover, the magnitude of the business
done for these principals, and their high financial standing as ap-

pears from the letters of the plaintiff's cashier, make it improbable that a mere broker was assuming to guaranty their paper. If, instead of the agreement made, he had promised within three days' time to have other paper to take the place of the dishonored paper, it would hardly be contended that he had assumed a personal liability. It seems to us equally clear, when he undertakes to have a draft to pay such paper within three days, that it is a draft from his principal, for which he does not personally vouch. We can find no indications of a "clearly-expressed intent to become personally bound," which is made by the authorities a condition of personal liability of an agent thus contracting in behalf of his principal.

It is urged, however, that, if this be deemed an undertaking of the principal, it is meaningless, because the defendant's principals are already liable upon the paper, by reason of their indorsement thereon. The obvious answer to this objection is that the purpose of the undertaking was not to add liability, but to assure the plaintiff that Dolge & Son would be prompt to care for any dishonored paper. If Dolge & Son were themselves asking for a line of discount upon their business paper, they might naturally add the assurance that, if any of the paper was not paid, they would within three days' time furnish the money with which to pay it. If such assurance would be a natural one upon a request from Dolge & Son, it is equally natural upon the request made by their agent.

Within the authorities, then, this contract, as any other contract, must be construed in the light of the surrounding circumstances. Its construction becomes one, as it is called, of mixed law and fact. Upon all the circumstances, the court or jury must determine what was the intention of the defendant in writing the letter, and whether the plaintiff relied upon any supposed personal liability assumed. Both of those elements must be found, in order to show a meeting of the minds of the parties, which is the essence of a valid contract. The cases cited by the learned counsel for the plaintiff assert no different rule of law. In Mills v. Hunt, 20 Wend. 431, the name of the principal was not disclosed. It is there said:

"Even if the agent disclosed the name of his principal, if he signs the written contract in his own name merely, which contract does not upon its face show that he was acting as agent of another, he will be personally bound thereby."

While that was dictum in that case, it does not impair the conclusion here reached, because the letter which contained the clause upon which personal liability is predicated disclosed, not only the name of the principal, but the fact of the representative capacity in which the agent was acting in negotiating these notes. The case of Baltzen v. Nicolay, 53 N. Y. 467, was a case of an undisclosed principal, as was also the case of Bush v. Cole, 28 N. Y. 261. In the case of Bank v. Westcott, 118 N. Y. 468, 23 N. E. 900, an agent was held as an indorser where he had indorsed without anything on the paper to indicate that he had indorsed as an agent, and where there was no evidence of authority to make an indorsement. It was held that there was no implied authority by reason of the agency. In the case of Powers v. McLean, 14 App. Div. 92, 43 N. Y. Supp. 477,

the agent had contracted in his own name without disclosing his principal, and the rule of law quoted in Mills v. Hunt, supra, was again quoted, but which, as above stated, is inapplicable to the case at bar, inasmuch as it appears upon the face of the letter that he was acting for a disclosed principal. As the conclusion of the trial justice is at variance with the conclusion here reached, the motion for a new trial must prevail. Defendant's exceptions sustained, and the motion for a new trial granted, with costs to the defendant to abide the event.

ADAMS and SPRING, JJ., concur. HARDIN, P. J., not voting.

McLENNAN, J. I cannot assent to the conclusion reached in this case. By the letter of December 18, 1897, in which was inclosed the notes in question, all of which were indorsed by Alfred Dolge & Son, the defendant assumed, in form at least, to guaranty the payment of such paper. The words used are as follows: "And, by chance should any paper you take pass due date, please advise me at once, and I will have draft in your hands in three days' time for payment." There is nothing in the letter to indicate that the defendant was agent for Alfred Dolge & Son, or that he (the defendant) was acting in any other capacity than as an individual. This letter, and the answer to it, dated December 20, 1897, constitute the entire agreement between the parties in respect to the transaction in question. There is evidence tending to show that, at the time the paper which is the subject of this litigation was delivered to the plaintiff, the plaintiff knew that the defendant was acting as broker or agent for the firm of Alfred Dolge & Son for the purpose of procuring its paper to be discounted, but such knowledge on the part of the plaintiff in no way affects the defendant, or relieves him from liability. The authorities cited (Mechem, Ag. § 358; Story, Ag. § 261; and the case of Whitney v. Wyman, 101 U. S. 396), and many others, hold, as stated, that when a man is known to be acting and contracting merely as an agent of another, who is also known as the principal, his acts and contracts will be deemed the acts and contracts of the principal only, if such agent had authority to act; but such rule is not applicable to the facts in the case at bar. If so, the guaranty contained in the letter of December 18, 1897, is meaningless, and has no force or effect whatsoever. Alfred Dolge & Son were absolutely liable upon the paper in question, by reason of their indorsement, and no guaranty by the defendant could add to or increase their liability. It was perfect and complete by reason of the indorsement, and independent of anything contained in the letter; so that, if the words quoted from the letter were sufficient to constitute a guaranty,—and it seems to be assumed that they were,— they could not have been used for the purpose of constituting a guaranty on the part of Alfred Dolge & Son, because, as before stated, they had already guarantied by their indorsement. The words employed by the defendant clearly were used for the purpose of giving additional security to the purchaser of the paper. Defendant says, "Should any paper you take pass due date, I will have

draft in your hands in three days' time for payment." That did not add to the obligation of Alfred Dolge & Son. They had undertaken, in as binding form as possible, to have the amounts of the notes held by the plaintiff at the place where they were made payable, respectively, on the very day that such notes became due, and, if they failed in that regard, an action could be commenced and maintained to enforce such obligation; but the obligation on the part of the defendant was, "If the makers and indorsers of the notes fail to pay, I will pay within three days after such failure." Illustration cannot make the principle more plain than do the facts disclosed by the evidence in this case, even giving them the most liberal interpretation in favor of the defendant. When the notes in question were delivered to the plaintiff, they were guarantied by Alfred Dolge & Son. Can it be said that the agreement contained in the letter of December 18, 1897, only constituted a reguaranty by Alfred Dolge & Son? One guaranty by Alfred Dolge & Son was as good as two. We think such was not the meaning of the language, nor the intention of the defendant when he wrote the letter in question. In the case of Hall v. Lauderdale, 46 N. Y. 74, the court say, "In case of written agreements executed by an agent, the agent is not generally personally bound, if the instrument can have any legal operation against the principal." The agreement made by the agent, the defendant, in this case, could by no possibility have any legal operation against the principal. If the defendant's contention is correct, it was surplusage, meaningless, and in no way affected, increased, or decreased the liability or obligation of Alfred Dolge & Son. If the agreement on the part of the defendant had been, "If the notes which I send to you are not paid when due, I will procure other paper of equal amount to be substituted in their place," under the cases cited it would undoubtedly be held that the obligation to substitute additional paper was the obligation of the principal. That is entirely different from holding that an agent, when he uses words clearly sufficient to constitute a personal guaranty of payment, will be presumed to have guarantied payment on behalf of his principal, when such principal has already made such guaranty. I think the decision of the learned trial justice was correct: that the exceptions should be overruled, and the motion for a new trial denied, with costs.

