Charles G. Meyer, Respondent, *v.* William F. Redmond et al., Copartners under the Firm Name of Adrian H. Muller & Son, Appellants.

*Principal and agent — auctioneers — sale — liability of auctioneers, selling stocks for undisclosed principal, for breach of contract of sale.*

1. A vendor or purchaser dealing in his own name, without disclosing the name of his principal, is personally bound by his contract, and it makes no difference that he is known to the other party to be an auctioneer, or broker, who is usually employed in selling property as the agent for others.

2. Where auctioneers enter into a written contract for the sale of stocks in their own name and which does not disclose that they are acting for another they become personally bound thereby and cannot impeach the contract by parol testimony.

3. An entry made by auctioneers in their sales book for the purpose of obviating the Statute of Frauds (Personal Property Law, § 31; Cons. Laws, ch. 41), which entry contains a statement that the sale was made for another, does not render void a written contract on the part of the auctioneers to become personally responsible for the fulfillment of the contract of sale.

*Meyer* v. *Redmond,* 141 App. Div. 123, affirmed.

(Argued May 10, 1912; decided May 24, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 6, 1910, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry A. Forster* for appellants. The trial justice erred in excluding proof by the defendants' auctioneer's sales book that they knocked down the stock at the auction sale, not on their own behalf, but only as agents for the seller. (*Baltzen* v. *Nicolay,* 53 N. Y. 467; *Hicks* v. *Minturn,* 19 Wend. 550; *Mentz* v. *Newwitter,* 122 N. Y. 491; *Hicks* v. *Whitmore,* 12 Wend. 548; *Coles* v. *Bowne,* 10 Paige, 526.) The trial justice erred in excluding parol proof that prior to the time fixed for the passing of the title to the stock, and upon the payment of the ten per cent deposit pursuant to the terms of sale the defendants disclosed to the plaintiff the name and address of their principal. (*Haggerty* v. *Palmer,* 6 Johns. Ch. 437; *Williams* v. *Connoway,* 3 Houst. [Del.] 63; *Morgan* v. *East,* 126 Ind. 42; *Mazoue* v. *Caze,* 18 La. Ann. 31; *Pike* v. *Balch,* 38 Maine, 302; *Matthews* v. *McElroy,* 79 Mo. 202; *E. S. Foundry Co.* v. *Grant,* 114

N. Y. 40; *Roach* v. *Curtis*, 191 N. Y. 390; *Schryer* v. *Fenton*, 15 App. Div. 158; 162 N. Y. 444; *Dows* v. *Kidder*, 84 N. Y. 121; *Hammett* v. *Linneman*, 48 N. Y. 399.)

*William H. Hamilton* and *Norman C. Conklin* for respondent. The defendants sold the stock to the plaintiff and became personally liable for the performance of their contract. (*De Remer* v. *Brown*, 165 N. Y. 410; *Mills* v. *Hunt*, 20 Wend. 431; 17 Wend. 333; *Baltzen* v. *Nicolay*, 53 N. Y. 467; *Burnham* v. *Eyre*, 123 App. Div. 777; *Zimmermann* v. *Weber*, 135 App. Div. 428; *Mills* v. *Hunt*, 20 Wend. 431; *Bush* v. *Cole*, 28 N. Y. 261; *Bassett* v. *Perkins*, 53 N. Y. S. R. 354; *Bibb* v. *Allen*, 149 U. S. 480; *R. E. Ins. Co.* v. *Moore*, 8 L. T. [N. S.] 242.)

HAIGHT, J. This action was brought to recover damages which the plaintiff is alleged to have suffered by reason of the failure of the defendants to perform their contract.

It appears that the defendants were auctioneers, doing business under the name of Adrian H. Muller & Son, and that they advertised for sale, for whom it may concern, a list of stocks, among which were forty shares of the Lake Charles Rice Milling Company of Louisiana. The terms of the sale were ten per cent cash on the day of the sale and the balance to be paid before one o'clock of the next day at the office of the auctioneers, 55 William street, in funds current at the New York Clearing House, no checks received in payment unless certified and approved. At the sale the plaintiff bid $1,600 for the forty shares of Lake Charles Rice Milling Company stock and the same was struck off to him upon that bid, and thereupon he at that time paid to the defendants ten per cent of the amount of his bid, to wit, $160, receiving from the defendants therefor the following:

"New York, *Oct.* 14, 1908.
"Office of Adrian H. Muller & Son,
"55 William Street, cor. Pine.
"Stocks and Bonds also bought and sold at private sale.
"Sold at auction this day, to Chas. G. Meyer
"40 shrs The Lake Charles Rice Milling Co. of
  Louisiana @ 40............................... 1600
"Received 10 per cent. on account............... 160

  "Balance.................................. 1440
"Payable before one o'clock to-morrow, Thursday.
               "ADRIAN H. MULLER & SON,
                                   "Per R.,"

On the following day the plaintiff tendered to the defendants a certified check for $1,440, the balance of the sum so bid for the stock and demanded the certificates of stock, which, however, were not delivered, and on the following day he wrote a letter to the defendants giving a statement of the facts of the purchase and payment of ten per cent and of the tendering of the check for the balance on the next day and formally demanded the fulfillment of the contract on their part. This they refused and thereupon this action was brought.

Upon the trial the defendants offered to show by one of the defendants that, after the stock had been struck off to the plaintiff and at the time that he paid the ten per cent of the purchase price, he was told that they were selling the stock for the People's Trust Company. This evidence was objected to and excluded by the court. The defendants also offered to show that the defendants had entered in their book of sales that they had sold for the account and risk of the People's Trust Company forty shares of the stock of the Lake Charles Rice Milling Company of Louisiana to Charles G. Meyer for $1,600 in accordance with the terms of sale and made a part of the memorandum. This evidence was also objected to and

31

excluded by the court. Exceptions were taken to these rulings. Benjamin on Sales, at section 219, sums up the English authorities upon the question of sales with the statement that "parol evidence may be offered to show that a signature to a note or memorandum though made by A. in his own name, was really made in behalf of B., his principal, when the action is brought for the purpose of charging B.; but it is not admissible in behalf of A. in such a contract, for the purpose of showing that he is not personally bound, and had acted only as agent of B." In Story on Agency, at section 269, it is stated that "a person, contracting as agent, will be personally liable, whether he is known to be an agent or not, in all cases where he makes the contract in his own name, or voluntarily incurs a personal responsibility, either express or implied. * * * So, if an agent selling goods, should *make out the memorandum of the sale, and the invoice of the goods, as bought of him, the agent, he would be personally liable for a failure to deliver the goods.*" And again at section 270 it is stated that "the general doctrine, as to the liability of agents, may be further illustrated in cases, where there is a written contract, purporting to be made between one person, as buyer, and another, as seller. Thus, for example, if an invoice, or a sold note, should describe the goods sold, as 'bought of A. B.,' the agent, as seller, and it should be signed by him, he would be held to be an immediate party to the contract, and liable as such, for the delivery of the goods to the buyer, notwithstanding he might have sold the goods, as the agent of the owner, and have made known that fact to the buyer before or at the time of the sale. For, if the agent contracts in such a form as to make himself personally responsible, he cannot afterwards, whether his principal be, or be not known, at the time of the contract, relieve himself from that responsibility." In *Mills* v. *Hunt* (20 Wend. 431, 433) Chancellor Walworth states the rule as follows: "The mere fact that they were auctioneers, was not sufficient

notice to the purchaser that they were not selling their own goods. (*Jones* v. *Littledale*, 1 Nev. & Perry's R. 677.) In the case of *Magee* v. *Atkinson* (2 Mees. & Wels. R. 440), where the broker had sent in a note of the sale to the purchaser in his own name, it was held that evidence of a custom in Liverpool, to send in brokers' notes without disclosing the name of the principal, could not be received for the purpose of protecting the broker from personal liability. At this day the law must be considered as settled, that a vendor or purchaser dealing in his own name, without disclosing the name of his principal, is personally bound by his contract, and it makes no difference that he is known to the other party to be an auctioneer, or broker, who is usually employed in selling property as the agent for others. *Even where he discloses the name of his principal, if he signs a written contract in his own name merely, which contract does not upon its face show that he was acting as the agent of another, or in an official capacity in behalf of the government, he will be personally bound thereby.*" This case has been considered as finally settling the law upon the subject in this state and it has been cited and approved over and over again in nearly every case in which the question of the liability of an agent has arisen. (*Bush* v. *Cole*, 28 N. Y. 261; *Baltzen* v. *Nicolay*, 53 N. Y. 467, 470; *Holt* v. *Ross*, 54 N. Y. 472; *Argersinger* v. *Macnaughton*, 114 N. Y. 535, 539; *Nat. C. Bank of Brooklyn* v. *Westcott*, 118 N. Y. 468, 475; *Meriden N. Bank* v. *Gallaudet*, 120 N. Y. 298, 307; *De Remer* v. *Brown*, 165 N. Y. 410, 419; *Powers* v. *McLean*, 14 App. Div. 92, 100; *Commercial Bank* v. *Waters*, 45 App. Div. 441, 447; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287, 294; Mechem on Agency, § 588; Dunlap's Paley on Agency, *381.) If, therefore, the defendants, the auctioneers, entered into a written contract with the plaintiff for the sale of the stock in question in their own name, or that of their copartnership,

which does not show upon its face that they were acting as the agents of another, or in any official capacity in behalf of the government, they became personally bound thereby and cannot impeach the contract by parol testimony. In this case we have their published notice of the list of stocks which they offered for sale, with the notice as to the terms and conditions upon which the sale would be made, and then immediately following the reception of the bid of the plaintiff and its acceptance is the written instrument delivered to him signed by the defendants in their firm name, in which they state in substance that they have sold at auction this day to Charles G. Meyer forty shares of the Lake Charles Rice Milling Company of Louisiana and acknowledge the receipt of ten per cent on account, leaving a balance of $1,440 which is payable to them on the following day before one o'clock. It appears to me that this instrument, taken in connection with the published list of securities to be sold and the terms upon which the sale was to be made constitutes a written contract on the part of the defendants as auctioneers and that they became bound thereby not only to account for the money that they had received in part payment of the purchase price, but to deliver the stock upon the next day upon the tendering to them of the balance of the purchase price. Of course, had the defendants sold, as auctioneers, upon notice that they were acting as agents for a disclosed principal and the plaintiff had made his bid for the stock under such a notice, then the agents, in the absence of an express written contract to be bound, would not be liable, and the plaintiff's remedy would be against the principal; but the purchaser has the right to know with whom he is dealing. He cannot be compelled to pay over the purchase price, or a part thereof, and then give time for the delivery of the property and thus be compelled to trust to the honesty and responsibility of a principal unknown to him; nor can he be bound to fulfill his bid by a principal whose

name is disclosed after such bid. In other words, the purchaser cannot, without his consent, be compelled to contract with an insolvent principal or a person whom, he he has reason to believe, cannot and will not carry out the terms of the contract. Instead thereof, when he bids under a notice in which the principal has not been disclosed, he may properly deem the bid to have been made upon the responsibility of the auctioneer and look to him for the fulfillment of the contract.

It is further contended that the entry made by the defendants in their sales book, in which it is stated that the sale was made for the People's Trust Company, became the contract between the parties and superseded the instrument delivered to the plaintiff upon the payment of the ten per cent of the purchase price of the stock. It may be true that this entry was made pursuant to the provisions of the Statute of Frauds (Personal Property Law, § 31), which provides that if goods be sold at public auction and the auctioneer at the time of the sale enters in a sales book a memorandum specifying the nature and price of the property sold, the terms of the sale, the name of the purchaser and the name of the person on whose account the sale was made, such memorandum is equivalent in effect to a note of the contract or sale subscribed by the party to be charged therewith. The purpose of this provision is to obviate the preceding provision of the section, which renders void a contract for the sale of goods, chattels or things in action for the price of fifty dollars or more unless the buyer accepts and receives a part of such goods or at the time pays a part of the purchase money. It does not and never was intended to render void a written contract on the part of the auctioneer to become personally responsible for the fulfillment of the contract of sale. The plaintiff in this case did not sign the entry made in the sales book. He did not see the entry made, nor does it appear that he knew of its existence. He relied, as he had a right to

do, upon the paper delivered to him at the time he paid the ten per cent of the purchase price.

Some criticism has been made with reference to the opinion of the Appellate Division as to the effect of striking off property upon an auction sale. In this case the auctioneer, pursuant to the advertisement, offered the stock in question for sale without disclosing the principal. The plaintiff made a bid therefor and the property was struck off to him. This indicated a meeting of the minds of the respective parties upon the subject but did not operate to make a binding contract. The amount of the bid was $1,600. Another step was necessary to be made in order to take the case out of the Statute of Frauds. This was done by the plaintiff's making a payment of the ten per cent specified in the notice and the receipt from the defendants of the bill of sale in which the receipt of the payment is acknowledged.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment affirmed.