**JOHN MINDER & SON, Inc. v. L. D. SCHREIBER CO., Inc.**

District Court, S. D. New York.
May 15, 1947.

Kreutzer, Heller & Selman, of New York City (Benjamin Heller, of New York City, of counsel), for plaintiff.

Alfred Sobol, of New York City, (David Gale, of New York City, of counsel), for defendant.

LEIBELL, District Judge.

On April 12, 1946 the plaintiff herein, John Minder & Son, Inc., served an amended complaint upon the defendant, L. D. Schreiber Company, Inc., setting forth two claims, one based upon breach of warranty and the other on negligence, in a transaction involving the sale by the defendant to the plaintiff of 18,000 dozen large processed eggs. In its answer to the amended complaint, filed April 30, 1946 and amended May 22, 1946, the defendant asserts as a first affirmative defense that in the transaction out of which these claims arose, the defendant was acting as an agent for a principal, the Oskaloosa Produce Company, and that the United States Army and the plaintiff had knowledge of such agency.

After a Pre-Trial Conference before Judge Knox it was stipulated by the attorneys for the respective parties that a separate trial should be had, without a jury, on the issue raised by the defendant's first affirmative defense. The trial of that issue began on March 31, 1947 and was adjourned for further proof to April 7, 1947, on which day it was concluded. It is the contention of the defendant that a branch of the United States Army Quartermaster's Corps, acting as a subagent of the plaintiff, knew that the defendant was only an agent for the Oskaloosa Produce Company and that such knowledge must be imputed to the plaintiff.

As a general rule a principal is charged with constructive knowledge of any material facts which his agent or a duly appointed subagent possessed or acquired in the course of transacting the business of the principal. Hoover v. Wise, 1875, 91 U.S. 308, at page 310, 23 L.Ed. 392; Hyatt v. Clark, 118 N.Y. 563, at page 569, 23 N.E. 891. Where it appears that the constructive knowledge is that possessed by a subagent, the principal is charged with that knowledge only if the primary agent had authority to appoint the subagent. Hoover v. Wise, supra; Carpenter v. German American Insurance Co., 1892, 135 N.Y. 298, 31 N.E. 1015. An examination of the contract (Ex. A) between the plaintiff herein and the War Shipping Administration, dated April 26, 1945, does not reveal any express authority to appoint a subagent for the purpose of procuring eggs, but such authority may reasonably be implied from the language used in designating War Shipping Administration the primary agent, from the circumstances surrounding its appointment, and from the nature of the transactions for which the primary agent was appointed. Shreveport Engraving Co. v. United States, 5 Cir., 143 F.2d 222, at page 226; 2 C.J.S., Agency, § 136b, p. 1359.

The contract between the War Shipping Administration and the plaintiff, John Minder & Son, Inc. (Ex. A), provided that the WSA was authorized to procure eggs for plaintiff in Minder's name "or otherwise". It was expected that the War Shipping Administration would make available to plaintiff a quantity of eggs "through the use of priorities or in any manner whatsoever", and would effect distribution of the eggs to allied nation's ships through the plaintiff as a "ship supplier". By Exhibit A the War Shipping Administration, was authorized to act as a purchasing agent for the plaintiff. It was contemplated that the War Shipping Administration, as a governmental agency, might make use of its position as such to acquire eggs for

the plaintiff through other agencies with which it had contact in reaching the sources of supply. Such a procedure would be covered by the broad phrase "in any manner whatsoever".

On April 11, 1945 the War Department entered into a contract, number QM 48469, with the Oskaloosa Produce Company, in the form of an order and acceptance, whereby the Oskaloosa Produce Company agreed to furnish the War Department with 252,000 dozen eggs, delivery to be made "to consignee as specified in delivery orders" (Ex. E). This contract contained a provision that: "Delivery of product to the Government through regularly established commercial or selling agencies will be accepted as performance under the terms of this contract." On April 16, 1945 by a supplemental agreement (Ex. E-1) or amendment to contract No. QM 48469, L. D. Schreiber Co., Inc., was designated by Oskaloosa Produce Company as a commercial or selling agent who would deliver the eggs for the Oskaloosa Produce Company and to whom payment might be made by the War Department; all in compliance with the basic contract (Ex. E) between the Oskaloosa Company and the War Department.

At the request of the War Shipping Administration the War Department acted as a subagent of Minder & Son, Inc., in the transaction which resulted in the order to Schreiber Co., Inc. The purchase order (Ex. D) executed by a representative of the War Shipping Administration on June 19, 1945, was made out on a form used by the Army Service Forces, Office of the Quartermaster General. It was indicated thereon that the quantity, 18,000 dozen eggs, was to be credited against the aforementioned War Department contract No. 48469 and that shipment was to be made from Oskaloosa Produce Company, but L. D. Schreiber Co., Inc., was named therein as the "Vendor". Attached to the purchase order was a memorandum form used by the War Department (Ex. D-1) which stated that the purchase had been made "for WSA". The same memorandum (Ex D-1) also listed Schreiber & Co. as the "Vendor" and added: "Above

purchase arranged through Egg Section, Poultry and Dairy Branch, Field Headquarters, Perishable Branch, Subsistence Division, Office of the Quartermaster General, Chicago 6, Illinois." At the bottom of the memorandum form, which pertained to the transaction in issue, there were lines for the signature of the person acting for the Quartermaster's Corps in making the purchase.

A witness, Robert F. Dart, an official of the War Shipping Administration, explained the manner in which the Army assisted the WSA in such transactions. He testified: "The ship suppliers, as they wanted eggs, would tell our regional offices in New York, New Orleans and San Francisco and the War Shipping Administration there would send the order to Chicago where we had Mr. Knauth as our representative. Mr. Knauth would hand the order to the Army * * *".

■ The defendant Schreiber's status as an agent for Oskaloosa Produce Company was known to the War Department (see Ex. E-1) when the order of June 19, 1945 was placed for eggs to be shipped to the plaintiff. But in its memorandum of the purchase (Ex. D-1) the War Department named Schreiber & Co. as the "Vendor". Since the War Department was an authorized subagent of Minder & Son, Inc., its knowledge of the defendant's position as an agent of the Oskaloosa Produce Company would be imputed to the plaintiff. But the plaintiff had no actual knowledge that the defendant was acting as an agent for the Oskaloosa Produce Company. In fact the WSA forwarded to plaintiff a copy (Ex.1) of the order of June 19, 1945 (Ex. D) which conveyed to plaintiff the information that defendant was the "Vendor". There is no question here of any kind of any fraud or deception. The plaintiff acted on the actual information conveyed to plaintiff by its agent and the documents the defendant submitted to plaintiff were in accord with that information. Apparently the defendant followed the directions of Exhibit D (of which Ex. 1 is a copy). Defendant had also received Exhibit D-1. Both of these documents advised that defendant was to be a "Vendor" in respect to

the shipment of eggs which were to be consigned to the plaintiff.

At the time defendant sent the invoice (Ex. F) and the draft (Ex. G) to the Bank for payment by plaintiff, the defendant knew that it had been designated as the "Vendor" and that the plaintiff was the consignee who was to pay for the merchandise. The invoice (Ex. F) was on the printed form used by L. D. Schreiber Co., Inc., the defendant, and was for merchandise "sold to" Minder & Son, Inc., the plaintiff. Thus the papers the defendant submitted to plaintiff were those of a seller and were such as plaintiff as a purchaser would expect to receive from defendant, who was named in the War Shipping Administration order as the "Vendor". Defendant could have described itself in the invoice as the agent of Oskaloosa Produce Company. It did not do so. It is true that at one place on the invoice the word "agent" appears in relation to L. D. Schreiber Co., Inc., but it was so used only as to a recital of certain additions to the cost, and it gave no indication that the defendant was acting as agent for Oskaloosa Produce Company or for any one in making the sale. The draft which was presented to the plaintiff with the bill of lading at the Corn Exchange Bank was drawn by L. D. Schreiber Co., Inc. The Egg Grading Certificate issued by the United States Department of Agriculture, which was forwarded to the plaintiff, bore the legend:

"Applicant          Oscaloosa Produce Co.

Shipper or Seller          L. D. Schreiber & Co. Inc."

This document further recites that the shipper or seller designated on the certificate was "as stated by applicant or contractor". It appeared from all the documents forwarded to the plaintiff that the defendant, L. D. Schreiber Co., Inc., was the "vendor" or "seller", and was a principal in this transaction.

An agent who contracts on behalf of a known or disclosed principal is generally not a party to the contract and has no rights or duties thereunder with respect to the third party. Jones v. Gould, 1910, 200 N.Y. 18, 92 N.E. 1071; Ell Dee

Clothing Co. v. Marsh, 1928, 247 N.Y. 392, 397, 160 N.E. 651; Keskal v. Modrakowski 1928, 249 N.Y. 406, 408, 164 N.E. 333; Mechem on Agency, § 1180, 1422 (2d Ed. 1914); 1 Williston on Contracts, § 281 (Rev.Ed.1936); Rest., Agency, § 320. However the cases indicate that this rule admits of certain exceptions. Where an agent acting for a disclosed or known principal specifically agrees to bind himself personally, the contract may be enforced against him if such intention is manifest or proved. Jones v. Gould, supra; Keskal v. Modrakowski, supra; Mechem on Agency, supra, § 1181; 1 Williston on Contracts, supra, § 281; Rest., Agency, § 320, 364. Where the contract is orally made the intention of the parties presents a question of fact which should be resolved by weighing the evidence of the parties. "Where a contract is in writing, however, and is executed by the agent in his own name, he may sue, and presumably be sued, upon it even though the name of the principal is disclosed, and though the principal also may sue or be sued thereon". 1 Williston on Contracts, supra, § 281, pp. 827, 828.

In Meyer v. Redmond, 1912, 205 N.Y. 478, 98 N.E. 906, 908, 41 L.R.A.,N.S., 675, the Court cited Magee v. Atkinson, 2 Mees. & Wels. R. 440, and quoted the following therefrom: "Even where he [the agent] discloses the name of his principal, if he signs a written contract in his own name merely, which contract does not upon its face show that he was acting as the agent of another, or in an official capacity in behalf of the government, he will be personally bound thereby." The New York Court of Appeals stated in the Meyer case that the principle had been approved over and over again in Bush v. Cole, 28 N.Y. 261, 84 Am.Dec. 343; Baltzen v. Nicolay, 53 N.Y. 467, 470; Holt v. Ross, 54 N.Y. 472, 13 Am.Rep. 615; Argersinger v. MacNaughton, 114 N.Y. 535, 539, 21 N.E. 1022, 11 Am.St.Rep. 687; Nat. City Bank of Brooklyn v. Westcott, 118 N.Y. 468, 475, 23 N.E. 900, 16 Am.St.Rep. 771; Meriden Nat. Bank v. Gallaudet, 120 N.Y. 298, 307, 24 N.E. 994; DeRemer v. Brown, 165 N.Y. 410, 419, 59 N.E. 129; Powers v. McLean, 14 App.Div. 92, 100, 43 N.Y.S. 477; and

Commercial Bank v. Waters, 45 App.Div. 441, 447, 60 N.Y.S. 981.

But in a later case, Ell Dee Clothing Co. v. Marsh, 1928, 247 N.Y. 392, 160 N.E. 651, 653, the same Court stated the rule to be that: "* * * where one party to a written contract is known to the other to be in fact acting as agent for some known principal, he does not become personally liable whether he signs individually or as agent."

In the same year, however, in Keskal v. Modrakowski, 1928, 249 N.Y. 406, 408, 164 N.E. 333, the same court approved the principles set forth in Williston and Mechem, previously cited herein. It would seem that the language used in the Ell Dee case was broader than was intended and that the rule in New York, as stated in Meyer v. Redmond, supra, remains unaffected.

In another case in the same jurisdiction, Shirai v. Blum, 1924, 239 N.Y. 172, 182, 146 N.E. 194, 197, 38 A.L.R. 603, the court permitted an agent to bring an action against the other party to the contract even though the principal had been disclosed since the agent had made the contract in his own name. The court said: "While both parties undoubtedly understood that the plaintiff was the agent of a disclosed principal and that the contract was made for the benefit of the principal, yet the contract was made in the plaintiff's name, and all dealings of the defendant were with the plaintiff, and the plaintiff may therefore properly bring the action for breach of contract in his own name."

If the agent is thus permitted to assume rights under such a contract it would follow that the duties and obligations thereunder also attach to him.

The United States Supreme Court has applied these same principles. In United States Shipping Board Merchant Fleet Corp. v. Harwood, 1930, 281 U.S. 519, 524, 50 S.Ct. 372, 373, 74 L.Ed. 1011, where a public agency in corporate form, possessing a quasi public character, made contracts in its own name which described it as representing and acting for and in behalf of the United States, but containing no words purporting to bind the United States or restricting the liability of the corporation the Court held the corporation liable on the contracts stating broadly that: "One acting as a private agent may be bound, notwithstanding his known agency, upon contracts which he executes in his own name. Sprague v. Rosenbaum, C.C., 38 F. 386; Guernsey v. Cook, 117 Mass. 548; Brown v. Bradlee, 156 Mass. 28, 30 N.E. 85, 15 L.R.A. 509, 32 Am.St.Rep. 430; Sadler v. Young, 78 N.J.L. 594, 75 A. 890; McCauley v. Ridgewood Trust Co., 81 N.J.L. 86, 79 A. 327; Jones v. Gould, 200 N.Y. 18, 92 N.E. 1071. See Worthington v. Cowles, 112 Mass. 30; Kean v. Davis, 20 N.J.L. 425; Cream City Class Co. v. Friedlander, 84 Wis. 53, 54 N.W. 28, 21 L.R.A. 135, 36 Am.St.Rep. 895. Compare Whitney v. Wyman, 101 U.S. 392, 25 L.Ed. 1050; Post v. Pearson, 108 U.S. 418, 2 S.Ct. 799, 27 L.Ed. 774."

Another writer, Story, "Commentaries on the Law of Agency", (9th Ed. 1882) § 269 states the rule, in language closely related to the facts in the instant case. He says: "* * * a person contracting as an agent will be personally liable, whether he is known to be an agent or not, in all cases where he makes the contract in his own name, or voluntarily incurs a personal responsibility, either express or implied. * * * So if an agent selling goods should make out the memorandum of the sale, and the invoice of the goods, as bought of him, the agent, he would be personally liable for a failure to deliver the goods."

The same principle is also set forth in the Restatement, Agency, in Sec. 323 with respect to integrated contracts: "(1) If it appears unambiguously in an integrated contract that the agent is a party or is not a party, extrinsic evidence is not admissible to show a contrary intent, except for the purpose of reforming the contract." See § 228, Restatement of Contracts for a definition of an integrated contract.

Under the special circumstances of the case at bar it would be manifestly unfair to hold that all the actual knowledge possessed by plaintiff as to the identity of the seller in the transaction (that L. D. Schreiber Co., Inc., was the seller) should be set at naught by the fact that a subagent of the plaintiff did know, but did not di-

482

vulge, that Oskaloosa Produce Company was the actual seller and that L. D. Schreiber Co., Inc., was only the commercial agent of the Oskaloosa Produce Company.

The first special defense, pleaded in the answer, should be dismissed on the merits. I am filing findings of fact and conclusions of law together with this opinion. Settle an order accordingly.