M. ROTH & Co., INC., Plaintiff, *v.* NEW YORK MERCANTILE EXCHANGE, Defendant.

Supreme Court, New York County, June 28, 1932.

*J. Lewis Furman* [*Clarence A. Appleton* of counsel], for the plaintiff.

*May & Jacobson, Hardy & Hardy*, for the defendant.

SHIENTAG, J. This is an action to recover the purchase price of fifty-nine carloads of eggs. Plaintiff is a member of the New York Mercantile Exchange, which is the defendant in this action. The latter, in order to facilitate the purchase and sale of the commodities dealt in by its members, established a clearing house pursuant to rules which, among other things, provided that " wherever these by-laws create a right in favor of the Clearing House or impose a liability on the Clearing House, it shall be construed as the right or liability of the Exchange and shall be enforcible by or against the New York Mercantile Exchange."

The action is predicated on the theory that the defendant was the purchaser of the eggs. The New York Mercantile Exchange contends that it was not the purchaser and, in any event, that an action for the price will not lie because there was no acceptance of the merchandise within the purview of the Personal Property Law.

1. The defendant was the purchaser. A procedure peculiar to the exchange was followed in the sale and purchase of the various commodities. In the instant case each of the fifty-nine trades

was originally made either by the plaintiff directly or through a broker upon the trading floor of the exchange. The plaintiff in each trade sold one carload of eggs of the grade of refrigerator firsts for delivery during November, 1930, and another member of the Clearing House bought at the same time for such delivery one carload of eggs of a similar grade. Immediately following such trade, the defendant issued a card by which the trade was confirmed. On the date of delivery, however, the seller and the purchaser were not the ones who made and received the tender. If, for example, one were long thirty cars of eggs, that is, had obligated himself to buy thirty cars, and before the date of delivery had sold fifteen cars, he offset fifteen sales against fifteen of his thirty purchases. Thus he was eliminated as to fifteen transactions. In the place and stead of the original seller and purchaser, the defendant, under its rule, was substituted. It became the purchaser with respect to the seller, and the seller with respect to the purchaser. When this arrangement was completed the original sellers and buyers stepped out of the picture and the Clearing House was substituted for all purposes. The original seller did not know the identity of the member who was in line — that is, who was under obligation to buy eggs from the Clearing House. The rules of the Clearing House furnish the sole index to the question here in dispute and point indubitably to the conclusion that the Clearing House was the purchaser in each transaction. It is provided by rule 9 that " When a Clearing House member is long or short any amount of any commodity, he shall deliver to the Clearing House in duplicate with his Clearing House sheet a memorandum signed by him acknowledging that he has bought from or sold to the Clearing House a particular commodity  *   *   *." Rule 6 provides that " Upon acceptance of any trade by the manager  *   *   *  the Clearing House shall be substituted as and assume the position of buyer to the seller and seller to the buyer in respect to that transaction." Rule 20 provides that " Whenever a Clearing House member agrees to purchase any butter, cheese, eggs or other commodity  *   *   *  the buyer shall be deemed to have bought the commodity from the Clearing House and the seller shall be deemed to have sold the commodity to the Clearing House after being accepted by the Clearing House according to rule 9."

It will thus be observed that the rules adopted by the defendant distinctly define the character of the trade, the position occupied by the seller and the purchaser, and the obligation imposed upon the defendant as purchaser. The language used is not open to dispute. " The Clearing House shall be substituted as and assume the position of seller to the buyer and buyer to the seller." And

the " buyer shall be deemed to have bought the commodity from the Clearing House and the seller shall be deemed to have sold the commodity to the Clearing House." The only exception provided for in rule 20 is that if for any reason the existence or validity of any contract is denied at the time of the purchase or sale by one of the original parties the Clearing House shall not be substituted upon such contract until such dispute is adjusted. Here the existence or validity of the trades was not denied. This very proviso, therefore, demonstrates that the defendant in the instant case was indeed the buyer and itself specified the exceptional instance in which it did not assume that position. The defendant was more than a nominal purchaser, for rule 20 specifically provides that the substitution of the defendant as buyer or seller shall be effective in law for all purposes.

This conclusion is fortified by rules 25 and 26 which provide that all losses resulting from the substitution of the Clearing House on the contract between members, as provided in rule 6, shall be borne by the Clearing House, this obviously because defendant was the buyer. Furthermore, under the rules the original seller and purchaser were relieved of all obligations with respect to each other and in their place was substituted the Clearing House with which a new contractual arrangement was effected. If a member of the Clearing House did not take the eggs after having been declared to be in line for the receipt of the eggs, any loss occurring thereby was not that of the original seller but was the loss of the Clearing House.

The point made by the defendant that it was acting only in a representative capacity — as an agent — even if true, would not relieve it of its liability for the price in this action.

Under familiar principles of law an agent buying for an undisclosed principal is personally liable to the seller. (*Meyer* v. *Redmond*, 205 N. Y. 478; *Cobb* v. *Knapp*, 71 id. 348.) "The law is clear that the mere fact that the agency, but not the principal, is disclosed will not free an agent from personal liability as a contractor." (1 Williston Cont. § 285.)

2. The defendant accepted the goods. On November fifteenth the plaintiff delivered the various documents, including negotiable warehouse receipts indorsed in blank and inspection certificates, to the defendant. When the documents in question were originally tendered to the defendant it accepted them under protest. Plaintiff's representative, however, refused to deliver the documents under such conditions. After conferences on the part of the agents of the defendant, plaintiff was given a clear and unconditional receipt for the eggs. Nothing more was required on the part

of the plaintiff to constitute delivery and acceptance. By the delivery of the documents and the unconditional receipt of them by the defendant ownership of the goods was vested in the defendant. Acceptance was there and then complete. Acceptance in large measure is a question of intention. The intention in this instance, however, need not be left to inference, for the defendant unequivocally expressed its assent and acceptance of the delivery and the court is not permitted to speculate concerning mental reservations which the defendant urges it entertained at the time it signed the unconditional receipt.

If there be any doubt on this point it is removed by the fact that there was a distinct appropriation of the goods to the contract and assent thereto on the part of the defendant. Immediately after the receipt of the documents the defendant, through its business manager, notified the members who were in line for the eggs that it was ready to tender delivery thereof and this was done in the usual manner. On November seventeenth the defendant delivered to the members the actual documents it had previously obtained from the plaintiff and received checks for the price. The majority of these checks were made payable directly to the Clearing House. In addition, the defendant permitted the resale of two cars as well as a transfer of ownership covering eight other cars. The defendant must be deemed to have assented to the appropriation of the eggs to the contract.

As further indicating the assent of the defendant to the appropriation, it appears that on November fifteenth at the opening of business plaintiff was committed to deliver 240 cars. On November seventeenth the plaintiff filed with the Clearing House its sheet showing 181 open trades, which sheet was accepted by the defendant together with plaintiff's check for $3,600. If the fifty-nine carloads had not been accepted the open trades would have amounted to 240 carloads and plaintiff's check for $3,600 would have been insufficient. The evidence clearly indicates that title to the goods passed and that an action for the price may be maintained. The case comes squarely within the rule laid down in *Glass & Co.* v. *Misroch* (239 N. Y. 475). Assent to appropriation " does not signify an acceptance so definitive and deliberate as to bar rescission for defects. * * * It signifies the buyer's willingness to take as his own the goods appropriated by the seller, subject to rescission and return if defects are afterwards discovered * * *. Assent to delivery, unless otherwise qualified, is assent to appropriation, and thus, subject to rescission, an acceptance of the title." (*Glass & Co.* v. *Misroch, supra,* 480, 484.)

There was in fact no justification for the rejection of the

goods after acceptance. Such justification is neither pleaded nor claimed. No complaint is made concerning the quality of the eggs delivered. The defendant's alleged grievance relates to other carloads of eggs in no way included in the deliveries which are here involved.

3. The emergency rule passed by the Clearing House committee on November seventeenth after delivery and acceptance of the eggs could not affect the transaction here involved which had ripened into consummated trades and vested rights. While the defendant is permitted to amend its rules, it may not interfere with contractual rights nor change the status of contracts which had been completely executed and place an additional burden upon the seller. The rule adopted was clearly retroactive and not binding on the parties to these transactions. It is true that when the plaintiff became a member of the exchange and the Clearing House it agreed to abide by all of the by-laws and rules passed by the organizations and their duly constituted committees. Such acceptance of membership in the defendant conferred upon it no right to alter or abrogate any contract by the passage of a rule after the making thereof. Where the directors, trustees, governing boards or committees are given the right to alter or amend rules, the courts have allowed a wide latitude. However, such amendments may not destroy or interfere with vested contract rights. (*Ayers* v. *Order of United Workmen*, 188 N. Y. 280; *Parish* v. *New York Produce Exchange*, 169 id. 34; *Matthews* v. *Associated Press*, 136 id. 333; *Biggs* v. *Sea Gate Association*, 211 id. 482.)

Judgment is accordingly directed for the plaintiff in the sum of $39,432.55, together with interest of $4,266.36. Twenty days' stay of execution; sixty days to make a case.